EMIL SLAYTON, Appellant, v. HANS HEMKEN, Respondent.

*Libel and slander — construction of a general release containing words of limitation — release, how avoided — ignorance of a particular wrong — words actionable per se — matter of inducement and innuendoes — proof of special damage.*

While all the parts of a general release are to be considered in determining its intent, the general rule of construction is that words of limitation, in order to restrict the effect of the general words, should precede and not follow the general words.

It is not, however, an inflexible requirement that the mere order of the arrangement of the component parts of a release must necessarily control, but the order has great significance.

Where an instrument is in a proper form to operate as a general release, ignorance on the part of the releasor of a claim, or of a cause of action, does not impair the effect of the release at law as a bar to that claim or cause of action.

In an action brought to recover damages for both libel and slander, the plaintiff recovered damages for a wrong perpetrated on the 27th day of October, 1890. It appeared that the plaintiff and defendant had been partners in business, were exceedingly hostile, and that on November 5, 1890, they exchanged general releases; that this was an adjustment not only of partnership relations but of serious reciprocal charges of personal torts; that the release set up by the defendant in this action was in the usual form containing the usual general words, and that these were followed by the words "and particularly from all claims and demands whatsoever arising out of the partnership relations between said parties as members of the firm of Hemken & Slayton."

*Held,* that the release was intended to comprehend not merely commercial controversies, but also actionable personal wrongs, and was a bar to a recovery;

That it included such wrongs, even though the party executing the release was ignorant of the existence of a particular wrong, unless it should be successfully attacked for mutual mistake or for the mistake of one party and the fraud of the other.

The words complained of in the fourth cause of action were " he (meaning the plaintiff) swindled and robbed me" (meaning the defendant).

*Held,* that these words were slanderous *per se* and imputed a crime, and that a charge submitting that question to the jury was erroneous.

It appeared that the third cause of action was taken from the jury upon the ground that the words complained of were not in themselves libelous and that special damage had been neither alleged nor proved ; but matter of inducement, clear and direct, showing the existence of circumstances extrinsic of the words, and which, when considered in connection with them, made such words defamatory, and innuendoes, applying the defamatory words to the plaintiff, were set forth.

*Held,* that where such allegations were made it was not necessary to show special damage.

APPEAL by the plaintiff, Emil Slayton, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of April, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 24th day of April, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

Four causes of action were stated in the complaint in this action.

The first cause of action charged the publication of a certain libelous article in the New York *Herald* of October 28, 1890 as follows :

" The firm of Hemken & Slayton was established at No. 14 Greene Street about a year ago, when I " (meaning the defendant) " came over from Germany, I put into the business $150,000. Mr. Emil Slayton " (meaning the plaintiff) " risked his experience only, but he valued that at a very high figure. Perhaps he imagined that I was pretty green, and that it would be a case of swapping his experience for my capital. The firm imported millinery goods, gloves and small wares. I was absent in Europe four months, making purchases, and returned only a month ago. Then I discovered that in my absence Mr. Slayton had concocted a conspiracy with certain employees of the firm to defraud me. He has a brother in Montreal, Theodore Slayton, who is in partnership with a man named Taff there. This firm did extensive business with us, and during my absence my partner had allowed them to fall into arrears to the extent of $25,000. It was part of the conspiracy, I believe. In order to protect myself at both ends of the line I went to Canada

with my lawyer, Mr. Louis Frost, and instituted proceedings against the Montreal firm, which resulted in their making an assignment of the entire business to me, which will certainly protect me to the extent of their indebtedness to me. I returned from Montreal last Saturday, and had injunction papers served on my partner, Mr. Emil Slayton. His plan was to haul out of the firm on January first, and leave me in a hole. Just what is the size of the hole he dug for me, or, in other words, the exact extent of his inroads upon the capital of the firm, I have not yet been able to discover ; but after he got the papers " (meaning after the plaintiff was served with the injunction papers) " he didn't show up anywhere. My lawyer surmised that he had skipped to Montreal, and telegraphed to have him arrested in case he appeared there. In the absence of any exact knowledge as to the extent of his defalcations, the figures were put at $150,000, the full capital of the firm. Certainly he could not have got away with more."

The second cause of action charged that the defendant on or about the 10th day of November, 1890, maliciously and falsely published and caused to be published certain libelous matter (being the libelous matter set out in the first cause of action) by circulating and causing to be circulated the newspaper in which was contained the alleged libelous matter.

The third cause of action charged a similar publication and circulation by the defendant of certain other alleged libelous matter, contained in a periodical known as the *Dry Goods Economist*, as follows :

"Hans Hemken, successor to Hemken & Slayton, is to be congratulated upon the successful termination of his difficulties with a troublesome partner. The sympathy of the trade throughout the dry-goods and fancy-goods trade is with Mr. Hemken."

The fourth cause of action charged the defendant with malicious slander by speaking in the presence and hearing of one Jules Drevet and others of and concerning the plaintiff the false and defamatory words : " He swindled and robbed me."

At the close of the plaintiff's case the court dismissed the first cause of action on the ground that the evidence was not sufficient to authorize a finding that the defendant was the person who had the interview with the reporter from whose notes the article in question

was taken, and that the defendant dictated the substance of the article subsequently published in the *Herald.*

The court also dismissed the third cause of action on the ground that the matter complained of was not libelous *per se.*

At the close of the proof of the respective parties the court submitted the second and fourth causes of action to the jury, which rendered a verdict in favor of the defendant.

The court instructed the jury that the matter contained in the second cause of action was libelous *per se,* and that if the jury believed that the defendant either personally or by his agents under his authority, purchased copies of the newspaper and caused them to be addressed and mailed to his correspondents, that would be a publication of the libel and would entitle the plaintiff to recover such damages as he had sustained in consequence of that publication.

The defendant's counsel requested the court to charge :

" 1st. If the jury find that the copies of the *Herald* of October 28, 1890, containing the libel set out in the second cause of action were mailed by direction of the defendant prior to November 5th, 1890, then the liability for publishing the said libel was included in, and released by, the release of November 5th, 1890, from the plaintiff to the defendant, and there can be no recovery upon the second cause of action.

" The COURT— In answer to that, I say there is no evidence tending to show that those statements were made prior to that, and I am inclined to so charge you, within this request, that if you find any such testimony, then you must exclude any publications prior to the fifth of November.

" Mr. EINSTEIN — I take an exception to your honor's not charging my request.

" The COURT— I charge it. I say, gentlemen, you cannot find for any publication prior to the fifth of November."

In regard to the fourth cause of action, the court charged the jury that if it found that the defendant had used the words complained of, and that they were such as to convey to a person understanding the relations between the parties, that the plaintiff had committed a crime, then the language used would be actionable and the plaintiff would be entitled to recover ; or if the jury found that

the statement was one tending to injure the plaintiff in his business or tend to prevent him from getting new employment or to make a new business, then the plaintiff would be entitled to recover.

*E. Ellery Anderson,* for the appellant.

*B. F. Einstein,* for the respondent.

PATTERSON, J.:

The complaint herein was upon three causes of action in libel and a fourth in slander. The first and third were dismissed by the court and a verdict was rendered for the defendant on the second and fourth. We do not agree with the views of the trial justice as to the effect of the evidence of the plaintiff's witness relating to the subject of the specific ruling by which this first cause of action was disposed of. The identification of the defendant as the person who, on the evening of the 27th of October, 1890, gave the reporter of the newspaper the defamatory statements that appeared in the article next day was sufficient, *prima facie ;* but we are of opinion that the course taken at the trial with respect to this cause of action was right for another and different reason ; one which not only applies directly to it, but brings up the question of the correctness of the charge to the jury in submitting the matters arising in the second cause of action.

The wrong there complained of is alleged to have been committed on or about the 10th of November, 1890. There was a question of fact properly left to the jury, whether copies of the newspaper containing the libelous matter were mailed by the procurement of the defendant to divers persons before or after November 5, 1890. For some months before that date the plaintiff and defendant had been co-partners in business. Exceedingly hostile relations had sprung up between them. On the day last named releases under seal were exchanged. The court charged that the release was a bar to all right of action for anything involved in this action that occurred prior to November fifth. It was shown that on that day the parties came to an accord and settlement of all the matters in controversy between them ; an adjustment of matters not only growing out of strictly business differences, but, as the record discloses, involving serious torts. The instrument was in form a

general release with its customary sweeping technical verbiage followed by the words " and particularly from all claims and demands whatsoever arising out of the partnership relations between said parties as members of the firm of Hemken & Slayton."

Regard being had to all the relations existing between these parties, we cannot say the instruction given to the jury was error. Something more than mere " partnership relations " or business demands and causes of action were in dispute. Bitter wrongs were alleged on both sides. Fraud and crime had been imputed to the plaintiff, who in turn accused the defendant of having caused his arrest and maligned him. Personal torts were, therefore, under consideration, and what was in negotiation before the release and became effected by it was a general settlement of all the outstanding differences and an abandonment of the respective grievances, whatever they might be, of the parties. Had the release been so drawn as to indicate a purpose to reserve anything from its operation, it would certainly be strictly limited in interpreting it. The only ground upon which such a limitation is sought to be impressed upon it by the appellant is by force of the words above quoted. The rule respecting the construction of releases is that, although taken most strongly against the releasor, yet general words are to be construed by their context, and, if there appear a clear intent to make a limitation or exception, it shall be allowed. Therefore, recitals are said to control the general clause and make it special, and so the particular subject of the dealing out of which the release arises may, if distinctly stated in the instrument before the general clause, confine the effect of that general clause to matters directly connected with that particular subject. But it is all a matter of intention. If the instrument is in a form to operate as a general release, ignorance of a claim or cause of action does not impair its effect at law as a bar to that claim or cause of action. (*Kirchener* v. *N. H. S. Co.*, 135 N. Y. 182.) But, while all parts of the instrument are to be considered in determining its intent, the general principle of construction has been that the words of limitation should precede and not follow the general words. Thus, in *Jackson* v. *Stackhouse* (1 Cow. 122, 126) the court says : " Where there is a particular recital and then general words follow, the general words shall be qualified by the particular recital." It is not to be inferred from this that it is

an inflexible requirement that the mere order of arrangement of the component parts of the release must necessarily control; but that order is of great significance, as is illustrated by *Dunbar* v. *Dunbar* (5 Gray, 103, 104, 105). There words of general release were followed by the words " and particularly from the debt and costs in two actions," etc. Shaw, Ch. J., for the court, says : " Certainly great liberality is allowed in construing releases. The intent is to be sought from the whole and every part of the instrument,   *   *   * so where certain debts, claims. and subjects of controversy are released, followed by general words, they shall be construed to be limited to the subjects enumerated, or those of a like kind and character, if such be the fair intent. (*Simons* v. *Johnson*, 3 B. & Ad. 175)." The *Dunbar* case seemed to turn largely upon the fact that the releasor did not first specify the particular things and then add the general clause, but *vice versa.* Here is the same description of release, using the same words, " particularly from." Obviously it comprehended something more. than mere business or commercial controversies. Actionable personal wrongs were, and were intended to be included, and, under the *Kirchener* case, ignorance of the existence of any particular wrong does not destroy the legal effect of the release, although it might have been attacked for mutual mistake, or mistake of one party and fraud of the other, an opportunity to do which was given by the justice at the trial, but was not availed of. Under this construction the charge was not erroneous, and the dismissal of the first cause of action was proper, for the alleged wrong therein set forth was perpetrated on the twenty-seventh of October, and was, therefore, fully released.

The third cause of action was taken from the jury on the ground that the words complained of were not in themselves libelous, and special damage was neither alleged nor proven. But matter of inducement, clear and direct, showing the existence of circumstances extrinsic of the words, but which, when considered in connection with them, made such words defamatory, was plainly set forth in the statement of that particular cause of action, and innuendoes appropriately making the application of the defamatory words to the plaintiff were also set forth. With such allegations it was not necessary to show special damage, for an action may be maintained with-

out it, as was held in the recent case in this court of *Gideon* v. *Dwyer* (87 Hun, 246). The disposition made of this cause of action at the Circuit was, therefore, erroneous.

The words complained of in the fourth cause of action are, "he (meaning the plaintiff) swindled and robbed me (meaning the defendant)." The court left it to the jury to determine the actionable character of these words, and whether it was the intention to use them as imputing crime, or in a sense that would injure the plaintiff in his business; and, giving the words their ordinary significance, whether a person cognizant of the relations existing between the parties and hearing the words would understand that a charge was made that the plaintiff had committed a crime. As this instruction was given it was error. The words were spoken to one Donnenberg in the hearing of the witness Ahlborn. They are plainly slanderous *per se.* To relieve them of that quality they must have been explained or in some way limited to particular facts, or shown to have been spoken to some one having knowledge or information of such facts. (*Hayes* v. *Ball*, 72 N. Y. 418; *Phillips* v. *Barber*, 7 Wend. 439.) Ahlborn says the defendant explained to Donnenberg "what the trouble was between him and Mr. Slayton," but does not recollect the explanation. Not one word other than those complained of can the witness recall. The case is, therefore, lacking in any kind of proof of explanatory matter, and the naked defamatory words spoken to Donnenberg were alone before the court. The words "swindled" and "robber" each have a well-known and but one signification. A robber is a thief, and to say of a man "you are a thief," imputes larceny (*Solomon* v. *Dutton*, 10 Bing. 402), and to say "he robbed J. W.," imputes crime also. (*Tomlinson* v. *Brittlebank*, 4 B. & A. 630.) So here there is a direct charge that the plaintiff robbed the defendant. It stands alone, unexplained, without evidence of circumstances showing anything from which an inference could be drawn that the words used were to be understood in any mitigated sense, or that the person to whom they were spoken, had any reason from knowledge or information possessed by him to understand them in any other than their ordinary meaning.

For the errors referred to relating to the third and fourth causes of action the judgment and order appealed from must be reversed

590    PEOPLE ex rel. GENERAL EL. CO. *v.* BARKER.

FIRST DEPARTMENT, DECEMBER TERM, 1895.    [Vol. 91.

and a new trial ordered as to such causes of action, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed and new trial ordered, costs to appellant to abide event.