(83 South. 130)

BARBOUR v. PONCELOR.  (6 Div. 908.)

(Supreme Court of Alabama.  June 30, 1919.
On Rehearing, Oct. 23, 1919.)

1. CONTRACTS ☞147(1), 176(1) — CONSTRUCTION FOR COURT; INTENTION GOVERNS.

The interpretation or construction of a written contract is a function of the court; the judicial purpose and duty being to ascertain the lawful intention of the parties as therein expressed, and to give effect to that intention.

2. RELEASE ☞30—CONTRACT RELEASING ACTION FOR FRAUD.

A stipulation in the sale of a second block of shares of stock, "It is further stipulated, understood and agreed to, and it is a part of the consideration of the transfer of this stock to B., that P. shall never be liable directly or indirectly for any claim of any sort or description, growing out of, or arising out of the sale of any stock of the R.-O. Company to said 'B.  And this stipulation applies to the sale of the first 125 shares"—was sufficiently comprehensive to include the consequences that might or would result from deceit or fraud in the sale of either block or shares.

3. EVIDENCE ☞409—RELEASE ☞30—PAROL EVIDENCE NOT ADMISSIBLE.

An unqualified and unambiguous release of any claim of any sort or description growing out of, or arising out of, a sale of corporate stock, cannot be restricted to claims known to both the parties or to the releasor only, even though a claim or claims existed in favor of the releasor which the releasor was wholly ignorant of until after the release was given, and parol evidence is inadmissible to so restrict the release as to avert its application according to its terms.

4. CONTRACTS ☞98—FRAUDULENT CONTRACTS VOIDABLE BUT NOT VOID.

Contracts, the execution of which are induced by fraudulent acts or omissions to the injury of the party defrauded, are voidable, not absolutely void, and an infirmity so intervening may be waived or surrendered by the party defrauded.

5. RELEASE ☞50—PLEADING TO AVOID.

Where release relied on in pleas was operative to exempt the releasee from any liability, even though arising from the releasee's fraud in sales, the plaintiff, if he would avert the result of his own act and agreement, was properly put to the assertion, specially, of any matter that would avoid the release.

6. RELEASE ☞24(2)—RESTORATION OF CONSIDERATION NECESSARY TO AVOID.

A releasor cannot avert the concluding effect of his written release, even on the ground of fraud in the procurement of the release, without restoring the consideration he has received under the contract, unless the primary duty to restore is excused for some reason recognized by law.

7. RELEASE ☞24(2)—RESTORATION OF BENEFITS NECESSARY TO AVOID.

In courts of law, whatever may be the process in equity, there is no method of moderating a releasor's primary duty to restore benefits received under the release because the releasee will not or cannot in his turn restore what he has received from the releasor.

8. RELEASE ☞17(1)—AVOIDANCE FOR FRAUD.

The fraud that would entitle a releasor to avoid a release must underlie the execution of the contract of release, not merely affect or infect a subject upon which the release would, if unavoided, operate to the discharge of the releasee.

On Rehearing.

9. EVIDENCE ☞461(1)—PAROL EVIDENCE NOT ADMISSIBLE TO AVOID.

Parol evidence is not admissible to explain a comprehensive unambiguous release, executed for a valuable consideration, notwithstanding that Code 1907, § 3973, provides that all receipts, releases, and discharges in writing must have effect according to the "intention" of the parties thereto.

10. CORPORATIONS ☞117 — SALE OF STOCK; RESCISSION FOR FRAUD.

In order to rescind a sale of corporate stock for fraud, the party desiring to rescind must seasonably do so.

11. CORPORATIONS ☞117 — RESCISSION OF SALE OF STOCK; RESTORATION OF PROPERTY NECESSARY.

In order to rescind a sale of corporate stock for fraud, the purchaser must restore that which he has received under the contract, or he must appropriately show such facts and circumstances as would in legal contemplation excuse him from the discharge of this primary duty.

12. ACTION ☞22 — DISTINCTION BETWEEN COURTS OF LAW AND EQUITY.

The distinction between the jurisdiction of the courts of law and the courts of equity is maintained in Alabama.

13. REFORMATION OF INSTRUMENTS ☞30 — COURT OF LAW CANNOT REFORM A WRITING.

A court of law cannot reform a writing, equity alone having such power.

14. RELEASE ☞39—EFFECT AS EXTINGUISHING CAUSE OF ACTION.

The doctrine that permits one fraudulently imposed upon or deceived in a contract of sale, either to sue for damages or rescind, does not touch a contest that is controlled by the dominating factor of a release, since the release, unless avoided in an appropriate way, extinguishes the liability upon which the plaintiff declares.

15. RELEASE ☞22 — ESTOPPEL; FRAUD IN ORIGINAL TRANSACTION.

Where release is given covering liability of seller of corporate stock to buyer, release cannot be avoided by contention that seller is es-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

topped to rely on the release bécause of fraud in the sale.

Gardner, J., dissenting.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by Ben F. Barbour against D. J. Poncelor in deceit and breach of contract. Because of adverse rulings on the pleading, plaintiff took a nonsuit and appeals. Affirmed.

The contract directed to be set out is as follows:

Articles of agreement and contract by and between D. J. Poncelor of Birmingham, Ala., party of the first part, and Ben F. Barbour, of Birmingham, Ala., party of the second part, witnesseth:

That D. J. Poncelor is the owner of 125 shares of the capital stock of the Rye-Ola Company, which stock is of the par value of $100.00. And the said D. J. Poncelor holds the office of secretary and treasurer at a salary of $100.00 per month, and all claims for salary is hereby released.

And whereas, party of the second part desires to purchase said stock.

Now therefore, I, D. J. Poncelor, do hereby agree to sell said stock to Ben F. Barbour, and resign the office of secretary and treasurer, for the following considerations:

(1) The said Rye-Ola Company is to execute and deliver a bill of sale to D. J. Poncelor of all of the machinery, fixtures, utensils of every kind and description, boiler, tanks, office furniture and fixtures, mule, wagon, harness, safe, chairs, desks, and tables, in fact said bill of sale is to convey free and clear of all liens or encumbrance of every kind or description, every one and all of the machinery, utensils, and fixtures that are now being used in and about the manufacture of Rye-Ola syrup, is to be ratified either at a meeting of the stockholders of the Rye-Ola Company, or the consent of all of the stockholders of the Rye-Ola Company must be indorsed upon original bill of sale, granting and stipulating that the property set forth and sold to D. J. Poncelor, was hereby ratified and confirmed by all of the stockholders of the Rye-Ola Company unanimously. And said bill of sale is to convey all of said property to D. J. Poncelor as his individual property in fee simple, subject to the right to use the said above described property in conjunction with the building for which they are to pay the rent as usual, under the lease of, to wit, $85.00 per month in advance, and which said lease expires on March 31st, 1918; but if the Rye-Ola Company or its assigns desire to cancel said lease on the 31st day of December, 1917, they shall have the right to do so on notifying said D. J. Poncelor, 30 days in advance.

(2) The said Ben F. Barbour is to pay or cause to be paid and delivered to D. J. Poncelor one certain note for $1,000.00, dated on or about, to wit, the 2d day of May, 1917, and due in 60 days, and payable to the American Trust & Savings Bank, upon which note the said D. J. Poncelor is indorser.

(3) It is also further stipulated and agreed that the said D. J. Poncelor shall release all of his right, title and interest in and to the capital stock of the Movol Company.

(4) The said Ben F. Barbour is to pay D. J. Poncelor the sum of $1,000.00 evidenced by his promissory note, due in eight months, with interest at 6 per cent. from date.

(5) And it is further stipulated, understood and agreed to, and it is a part of the consideration of the transfer of this stock to Ben F. Barbour, that D. J. Poncelor shall never be liable directly or indirectly for any claim of any sort or description, growing out of, or arising out of the sale of any of the stock of the Rye-Ola Company to said Ben F. Barbour. And this stipulation applies to the sale of the first 125 shares, as well as to the sale of the remaining 125 shares contemplated in this contract and agreement.

Witness our hands this 22d day of May 1917.

[Signed] D. J. Poncelor.
Ben F. Barbour.

Defendant's pleas asserted section 5 of the contract and a performance by the defendant of all the stipulations and agreements on his part in the transfer of said stock and of the putting the same into the hands and possession of the plaintiff, who thereafter affirmed, asserted, and retained the ownership thereof.

The plaintiff filed replication asserting:

(1) That at the time of the making and signing of the contract of May 22, 1917, plaintiff did not know that the Rye-Ola Company did not have exclusive ownership of said formula.

(2) Plaintiff did not know at the time of signing of the contract of May 22, 1917, that the defendant did not own the shares of stock referred to in the original complaint.

(3) Plaintiff did not know of the falsity of the representations or said breaches of contract as to the earning power of the corporation.

(4) Combines the allegations of replications 1, 2, and 3 with the additional averment that no facts were brought to the attention of the plaintiff which would put him on notice of the deceit which had been practiced at said time.

(5) No knowledge or notice of the deceit practiced by defendant on plaintiff or of said breaches of agreement.

(6) Want of knowledge on part of plaintiff of the facts and knowledge of defendant of such facts and the intentional concealment of such facts from plaintiff, and that plaintiff would not have executed the contract had he had knowledge.

The other replications assert the same defenses in varying phraseology.

Weatherly, Deedmeyer & Birch, of Birmingham, for appellant.

Weakley & Rice, of Birmingham, for appellee.

McCLELLAN, J. The plaintiff (appellant) stated his case in several counts claiming damages for deceit practiced upon him by the defendant (appellee) in the sale to plaintiff of certain shares of capital stock in a corporation on November 28, 1916, and in one count declaring upon the breach of this contract of sale. The defendant set up a written release of liability of the causes of action declared on, given, it is averred, on May 22, 1917, by the plaintiff to the defendant for a valuable consideration and purporting to conclude in most general, comprehensive terms, against the defendant's liability resulting in any way from the respective sales of the two blocks of capital stock of the corporation. The plaintiff's demurrers to special pleas, in addition to the general issue, asserting this defense were overruled. The plaintiff replied, along with a general traverse, in a number of replications; to which the defendant's demurrers were sustained. Because of these adverse rulings, the plaintiff suffered a nonsuit.

It is to be borne in mind that the cause of action declared on in this complaint is rested upon the contract consummated on November 28, 1916, not the contract made on May 22, 1917, in which the second block of 125 shares was sold by the defendant to the plaintiff. The defendant's pleas invoked the effect of the fifth paragraph of the contract executed on May 22, 1917. This paragraph reads:

"(5) And it is further stipulated, understood and agreed to, and it is a part of the consideration of the transfer of this stock to Ben F. Barbour, that D. J. Poncelor shall never be liable directly or indirectly for any claim of any sort or description, growing out of, or arising out of the sale of any of the stock of the Rye-Ola Company to said Ben F. Barbour. And this stipulation applies to the sale of the first 125 shares, as well as to the sale of the remaining 125 shares contemplated in this contract and agreement."

The report of the appeal will set forth the contract in which this clause appears.

[1-3] The interpretation or construction of the contract in which the quoted matter occurs was a function of the court; the judicial purpose and duty being to ascertain the lawful intention of the parties as therein expressed and to give effect to that intention. Murphy v. Black, 41 South. 877, 878;[1] Jordan v. McDonnell, 151 Ala. 279, 282, 44 South. 101; 34 Cyc. p. 1075. The provisions of the contract reproduced above operated as a release of the defendant, the seller, from all liability, "directly or indirectly, for any claim of any sort or description growing out of or arising out of the" sales of both blocks

of stock to the plaintiff. Unless avoided, this release, most comprehensively expressed, affected to exonerate the defendant from any consequences that might result from those sales to the injury or damage of the plaintiff who gave the release for a valuable consideration. That the terms employed in the release feature of the contract were sufficiently comprehensive to include the consequences that might or would result from the deceit or fraud or breach declared on in this complaint, cannot, we think, be a matter of doubt. For the expression of the purpose manifest upon the face of this release, broader terms could not have been chosen. The effect and operation of the unequivocal terms thus employed—unqualified by anything else appearing in the writing—cannot be restricted to claims known to both the parties or to the releasor only, even though a claim or claims existed in favor of the releasor in consequence of the releasee's fraudulent acts or omission in respect of the sales of the two blocks of stock, of which wrongful acts or omissions the releasor was wholly ignorant until after this release was given; and parol evidence would be inadmissible to so restrict the release as to avert its application according to its terms. 34 Cyc. p. 1092; Kirchner v. New Home Sewing Machine Co., 135 N. Y. 182, 187, 188, 31 N. E. 1104; Sherburne v. Goodwin, 44 N. H. 271, 276; Slayton v. Hemken, 91 Hun, 582, 36 N. Y. Supp. 249, 251; Pierson v. Hooker, 3 Johns. (N. Y.) 68, 3 Am. Dec. 467, cited by this court in Thomason v. Dill, 30 Ala. 444, 454, 455, in support of the familiar rule that a written contract, free from ambiguity, is conclusive upon the parties, precluding, in the absence of fraud and mistake, recourse to parol evidence to introduce stipulations or exceptions omitted from the instrument; anything omitted being regarded as abandoned.

[4-6] Contracts, the execution of which are induced by fraudulent acts or omissions to the injury of the party defrauded, are voidable, not absolutely void; and an infirmity so intervening may be waived or surrendered by the party defrauded. The release relied on in the pleas being operative to exempt the releasee from any liability, even though arising from the releasee's fraud in the sales, the plaintiff, if he would avert the result of his own act and agreement, was properly put to the assertion, especially, of any matter that would avoid the release. Differing from the rule prevailing in some jurisdictions (see annotations to Pattison v. Seattle R. Co., 35 L. R. A. [N. S.] pp. 660, 664, where both lines of authority are shown; 23 R. C. L. pp. 411, 412), this court long since accepted the doctrine that a releasor cannot avert the concluding effect of his exonerating act, even on the ground of fraud in the procurement of the release, without restoring the consid-

---

[1] Reported in full in the Southern Reporter; reported as a memorandum decision without opinion in 148 Ala. 675.

eration he has received under the contract—unless this primary duty to restore is excused for some reason recognized by law. Rabitte v. A. G. S. Ry. Co., 158 Ala. 431, 47 South. 573; B. R. L. & P. Co. v. Hinton, 158 Ala. 470, 48 South. 546; B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280.

[7] Whatever the considerations that might afford bases for discrimination in the application of the doctrine or incline the judgment to accept the view prevailing elsewhere (23 R. C. L. pp. 411–413), the stated conclusion of this court on the question has become too deeply embedded in our law and has been too often applied to now justify a re-examination of its soundness with a view to the announcement of a different rule. The reason and basis of the doctrine this court has accepted is that the releasor cannot be permitted to repudiate the release and at the same time retain benefits, derived by him therefrom, which he might restore. The rule's force in a court of law is directed at the releasor who would assert a right concluded by his release, unless he avoids it; and this duty upon the releasor is not dependent upon the fact that the releasee, who relies upon and asserts the release, will not or cannot restore to the impleading releasor that which the releasee received from the releasor. In our courts of law, whatever may be the process in equity, there is no method for moderating the releasor's primary duty to restore benefits received under the release because the releasee will not or cannot, in his turn, restore what he has received from the releasor. The averments of the replications, seeking to avoid the release, did not conform to this requirement of the plaintiff, the releasor; and were demurrable on that account.

[8] The fraud that would entitle a releasor to avoid the release must underlie the execution of the contract of release, not merely affect or infect a subject upon which the release would, if unavoided, operate to the discharge of the releasee. The fraudulent acts or omissions or concealments averred in the complaint and in the replications relate to the sale of the stock, not to the execution of the contract of release. The plaintiff, the releasor, engaged, for a valuable consideration, to hold the defendant, releasee, harmless in the circumstances and with respect to the subject-matter defined in the broad terms of his release; and to his own contract must be attributed the unfortunate plight in which he finds himself. The rulings of the court on the replications and pleas accord with the principles stated. The judgment is affirmed.

Affirmed.

All the Justices concur except GARDNER, J., who dissents.

GARDNER, J. (dissenting). As shown in the above opinion, plaintiff purchased under two separate contracts 250 shares of the capital stock of the Rye-Ola Company, a corporation, 125 shares of which were purchased November 28, 1916; the purchase of the latter 125 shares being provided for in the contract of May 22, 1917.

This cause of action is based upon the first contract of purchase; the plaintiff claiming in several counts damages for deceit practiced upon him by defendant, setting up numerous false representations, among them: (1) That the defendant did not own and had no right to sell the stock, which fact was known to him at the time of sale; (2) that the stock was fictitious and of no value, which was known to the defendant; and (3) other false representations as to the ownership by the corporation of a certain formula, which constituted the principle if not the sole value of the corporation, which representation was knowingly made to mislead.

In the contract looking to the purchase of the remaining 125 shares of stock there was inserted what may be referred to as the release clause, numbered 5 in the majority opinion. This release was pleaded as a full defense to the cause of action. Plaintiff by way of reply interposed replication E, which sets out the full history of the two transactions, and in which it is expressly averred that upon the execution of the contract of May 22, 1917, some of the above false representations were reiterated; and plaintiff acted on said representations in entering into said contract of May 22, 1917, and the defendant knew that such representations were false when he made them; that defendant received all the considerations mentioned in the contract of May 22, 1917, and went into the possession of the personal property therein mentioned, and converted the same to his own use and purpose; and that it is impossible for the defendant to return to plaintiff the considerations which inured to defendant's benefit on the execution of such contract, and put plaintiff in statu quo. Plaintiff avers that as to the purported release embodied in said contract, the execution of which was procured by said false representations, the defendant is estopped to demand the return of the considerations as a condition precedent to the rescission of that part of the contract relating to the release until it appears that defendant is ready, able, and willing to return to the plaintiff the considerations which moved from plaintiff to defendant in the execution of said contract.

It thus appears that the plaintiff in his replication shows that a fraud was practiced upon him in the original transaction of November 28, 1916, whereby he purchased worthless stock, and of which fraud he was ignorant at the time of the execution of the contract of May 22, 1917, which contained the release clause above noted; and the de-

fendant reiterated the false representations at the time of the execution of this latter contract. Notwithstanding the pleadings disclose these fraudulent representations, the holding of the majority of the court concludes to the effect that the broad and comprehensive language contained in this latter contract—in what is here termed the release clause—forecloses the plaintiff in this cause of action. I cannot agree to such holding. I have read the cases cited in the opinion to sustain this conclusion, viz., Kirchner v. New Home Sewing Machine Co., 135 N. Y. 182, 31 N. E. 1104; Sherburne v. Goodwin, 44 N. H. 271; Slayton v. Hemken, 91 Hun, 582, 36 N. Y. Supp. 249; Pierson v. Hooker, 3 Johns. (N. Y.) 68, 3 Am. Dec. 467.

In none of these cases was the question of fraud involved, and, indeed, in some of them it clearly appears that fraudulent conduct on the part of the releasee would avoid the release. Indeed, in Kirchner v. New Home Sewing Machine Co., the New York court expressly points out that they do not hold that the release is conclusive or unavoidable, but that the plaintiff may show fraud on the part of the defendant, in which event, to quote the language of the decision:

"He is entitled to an instruction to the jury to the effect that the release does not bar his right to recover."

That decision also held that such fraud on the part of the defendant would be sufficient to estop him from insisting upon any advantage to be derived from plaintiff's mistake, and that, under such circumstances, the strict rule as to restoration as to what has been received, applied in cases of rescission of contracts, is not applicable to such case, saying:

"This is not the case of an attempted rescission of a contract, upon the ground of fraud, and the plaintiff is not, therefore, under any obligation to return what he has received, or to tender restoration. He is not seeking to disaffirm the agreement actually made, but merely objecting to the application of the written evidence of it to a subject which the parties did not intend to include in it."

In Slayton v. Hemken, supra, the question of fraud was not involved. The opinion discloses that an opportunity was given by the trial court to the plaintiff to show fraud, but was not availed of. Nor did the case of Pierson v. Hooker, supra, embrace any question of fraud. The citation of this authority therefore, by this court, in Thomason v. Dill, 30 Ala. 444, is without significance. The authority, however, was cited merely to a statement in the opinion written by Justice Stone, to the effect that when a contract is reduced to writing all previous agreements are merged in the writing and, to use the language of the decision:

"In the absence of fraud and mistake, stipulations left out of the writing are considered as abandoned."

In St. L. & S. F. R. R. Co. v. Richards, 23 Okl. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, the Supreme Court of Oklahoma had under consideration a question very similar to that here involved. The opinion points out the two kinds of fraud avoiding a release: (1) Fraud in its execution whereby the party was induced to sign an instrument he really did not intend to make; and (2) fraud in the procurement of the instrument by false representations as to collateral matters, whereby he was induced to sign the instrument, the contents of which he understood, but which he would not have signed but for said false representations of collateral matters. Speaking to the question here under consideration, the court said:

"Nor should it be forgotten or overlooked in the consideration of this class of cases that they are not strictly actions brought for rescission. * * * The contract or release is a mere incident to the suit. The cause of action grows out of an independent antecedent fact, and the release is simply a matter of evidence in defense to the plaintiff's claim of right to prosecute. Nor does it matter that plaintiff, in the release itself, waived, for a consideration, the right to maintain a suit for damages inflicted, if in fact the release was procured through fraud, for no contract is made except the parties thereto retain within themselves the right to assail it on the ground of fraud. Even a stipulation to the effect that any false and fraudulent representations inducing the other to enter into it should not affect its validity would of itself be of no validity. The law will not give effect to a stipulation, if fraudulently entered into, that would grant immunity to iniquity and fraud."

Plaintiff's cause of action is not rested upon this contract, but upon one previously entered into, and, if induced to make the release by false and fraudulent representations, he should be permitted to reply such fraud as an answer why the release should not be held binding upon him. This did not, in my judgment, at all infringe on the rule that you cannot contradict a written contract by parol; but these facts and circumstances set up in the replication should be permitted in evidence for the jury to determine whether or not from the language used such a claim, as here sued upon, was intended to be embraced within the terms of the release. That such fraud suffices to avoid the release, I entertain no doubt; and the only serious question in my mind is one of practice as to whether or not such fraud in procurement may be pleaded as an answer to such plea in the trial of the cause at law. The authorities are in conflict as will be noted by examination of the many cases cited in the note to the case of Olston v. Oregon Water Power & R. R. Co., 20 L. R. A. (N. S.) 915.

In Wagner v. National Life Ins. Co., 33 C. C. A. 127, 90 Fed. 401, cited in the above note, it was held that in cases of this character replications setting up such fraud should be allowed; the court saying:

"The history of the course of the English and American courts in defeating releases which would have been set aside in equity justifies the conclusion that there was more liberality in allowing replications to avoid them than in the case of other specialties. The inconvenience of compelling a plaintiff in an action at law, who was met by a plea of release, to resort to an expensive and vexatious proceeding in equity to set it aside for fraud, led courts of law to exercise what has already been alluded to as their equitable jurisdiction to defeat the plea."

The court concluding as follows:

"Our conclusion is, therefore, that it is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution. We are glad to come to this conclusion, because it avoids circuity of action, and thus facilitates the administration of justice. * * * But where the issue is simply one of fraudulent misrepresentation, it may be as well tried to a jury as to a court of equity, for fraud is an issue of which courts of law and equity, from time immemorial, have had concurrent jurisdiction."

Where the issue is between the original parties to the transaction, and the question of fraud only arises upon the reply of the plaintiff to the defendant's plea of release, I am in full accord with what was said by Judge Taft, the writer of the opinion in Wagner v. Nat. Life Ins. Co., supra, to the effect that the plaintiff may meet such a plea of release by replication setting up the fraud, and not be compelled in the midst of a trial at law to resort to an expensive and vexatious proceeding in equity to set aside the instrument. Such a situation is held by some of the authorities to present an exception to the general rule, and clearly, a court of law may as well try the entire matter which arises collaterally to the main suit, and thus in one suit dispose of the litigation and avoid circuity of action.

But, aside from all these considerations, I am unable to understand why the provisions of section 3973 of the Code of 1907 are not here directly applicable as to this particular release. The plaintiff by his replications to the pleas merely attempted to show the fraud which was perpetrated upon him, and the ignorance on his part of 'any claim of right of action growing out of said fraud at the time of the execution of the contract containing the release; and that therefore his right of action upon the contract of November 28, 1916, was not embraced in the release, as it could not have been within the intention of the parties at the time.

Under the foregoing statute a release is placed upon the same basis as a receipt, and it is expressly provided that—

"All receipts, releases, * * * must have effect according to the intention of the parties thereto."

This statute has been frequently construed by this court, and the case of Stegall v. Wright, 143 Ala. 204, 38 South. 844, with the authorities therein cited, clearly demonstrates to my mind that such replication was a complete answer, and that evidence to this effect was entirely admissible under the provisions of said statute. Under this statute there can be no question but that the replication was proper as an answer to said plea in the trial of this case at law; and I am therefore of the opinion that under the provisions of this statute, without regard to any other question, error was committed in sustaining the demurrer to the replication, and the cause should be reversed.

The cases of St. L. & S. F. R. R. Co. v. Richards and Kirchner v. New Home Sewing Machine Co., supra, sufficiently show that the strict rule as to restoration of what has been received—required in cases of rescission —is without application to the situation here presented; but, in any event, the replication sufficiently excuses the plaintiff from such restoration.

I respectfully dissent.

## On Rehearing.

McCLELLAN, J. [9] The brief in support of the application is a reargument of the questions considered on the original submission, with the citation of some additional texts and decisions and the earnest insistence upon the proposition that the provisions of Code, § 3973, providing that "all receipts, releases, and discharges in writing, whether of a debt of record, or a contract under seal, or otherwise, must have effect according to the intention of the parties thereto," should be accorded the effect to allow inquiry through parol evidence—notwithstanding the comprehensive, unambiguous terms borne by the quoted fifth clause—into the intent of the parties with respect to the comprehension therein of the extinction of the asserted liability on account of the misrepresentations or fraud set forth in the initial pleading. Otherwise stated, the proposition contended for is: That because of the terms of the quoted statute the intention of the parties, in the execution of this release, is open to inquiry or explanation, and that the extent or application of the exoneration given in the quoted clause is subject to investigation, notwithstanding the comprehensive, unambiguous

terms of the release which was executed for a valuable consideration. The object and whole operation of this statute (section 3973) has been long since stated by this court, since which time the statute has been, without substantial change, re-enacted with that construction impressed upon it, and hence a part of it. In Stegall v. Wright, 143 Ala. 204, 206, 207, 38 South. 844, even in considering a receipt, not a release, it was said:

"The statute does not in any way change the probative force of a receipt. It simply declares that it must have effect according to the intention of the parties. In ascertaining what the intention of the parties was, *the rules of evidence are the same as they were before* the statute." (Italics supplied.)

The quoted sentence could not be true if the statute's effect was to relegate to the realm of parol inquiry the intention with which parties gave unambiguous written releases and discharges. In Murphy v. Black, 148 Ala. 675, 41 South. 877, Justice Denson writing, it was held that even an unambiguous receipt, wherein something more than the mere reception of money or other thing was acknowledged, is not open to inquiry by parol; that "it was [is] the duty of the trial court to interpret it and declare its effect to the jury." In Jordan v. McDonnell, 151 Ala. 279, 282, 44 South. 101, 102, it was said of this statute:

"As heretofore decided, the only effect of section 1805 [now section 3973] of the Code of 1896 is to dispense with the necessity of a formal release under seal, and give effect to the receipt of [or] release 'according to the intention of the parties.'"

This statement of the limited effect of the statute (Code, § 3973) consists with the pronouncement made in Cleere v. Cleere, 82 Ala. 581, 588, 3 South. 107, 60 Am. Rep. 750, among other earlier decisions. The reason for the rule opening mere receipts for money or other thing "to explanation, modification, or contradiction by parol evidence" (Gravlee v. Lamkin, 120 Ala. 221, 24 South. 756, 759, among others, including Stegall v. Wright, 143 Ala. 206, 207, 38 South. 844), lies, as Brickell, C. J., declared in Gravlee v. Lamkin, supra, in the "informal, nondispositive" nature of a mere written receipt, of which, as distinguished from a release, Cowen, J., in McCrea v. Purmort, 16 Wend. (N. Y.) 460, 474, 30 Am. Dec. 103, 113, said:

"A release cannot be contradicted or explained by parol, because it extinguishes a pre-existing right; but no receipt can have the effect of destroying, per se, any subsisting right—it is only evidence of a fact. The payment of the money discharges or extinguishes the debt; a receipt for the payment does not pay the debt, it is only evidence that it has been paid. Not so of a written release; it is not only evidence of the extinguishment, but is the extinguisher itself."

Touching this distinction, Justice Maynard remarked, in Kirchner v. New Home Sewing Mach. Co., 135 N. Y. 182, 188, 31 N. E. 1104, 1106:

"There is just here a wide difference between a *receipt* and a *release*, and whatever confusion there may be in the authorities upon this point has resulted from *a failure to observe the distinction.*" (Italics supplied.)

So, the statute (Code, § 3973) cannot aid the appellant in the premises.

The language of the fifth clause, quoted in the original opinion, is too plain, to unequivocal, too comprehensive to need construction or interpretation. It stipulated, for a consideration and as a part of the sale consummated, that appellee "shall never be liable directly or indirectly for any claim of any sort or description growing out of or arising out of the sale of any of the stock of the Rye-Ola Company to said Ben F. Barbour. And this stipulation applies" to both sales of the stock. More all-inclusive language could not have been employed with respect to the subject of the exoneration assured, for a consideration, by the provision.

The terms employed being all-inclusive, unambiguous, and unqualified in any degree by other provisions in the instrument of which the fifth clause is a part, the writing constitutes, to quote the full, well-supported statement from the Kirchner Case, supra—

"the only competent evidence of the agreement of the parties upon the subjects to which they relate unless avoided for fraud, mistake, duress, or some like cause. In Parsons on Contracts the rule is stated to be: * * * 'If a plaintiff is met by a general release under his seal to the defendant, he cannot set up an exception by parol.' In the early case of Pierson v. Hooker (3 Johns. 68; s. c., 3 Am. Dec. 467), the release was 'of and from all debts and demands of every nature and kind whatsoever,' and evidence was offered and excluded at the trial to show that at the time of its execution it was not intended to include the demand in suit, and Chief Justice Kent held the ruling correct, saying: * * * 'The instrument is general and comprehensive, and expressly reaches to every debt and demand of every kind. To show by parol proof that it was not so intended is to contradict or explain away the instrument, which is contrary to the established rule of law.'"

As noted in the original opinion, the general rule to which Kent referred was announced by this court in Thomason v. Dill, 30 Ala. 454, 455, and this deliverance by Kent was cited to support it.

In Sherburne v. Goodwin, 44 N. H. 271, 275, 276, it was pertinently said:

"In the case before us, it is shown by the master's report that Goodwin did, and Coues' agent did not, understand that the money in question was included in the adjustment. But however this fact may be, it is clearly not admissible to affect the construction of the release, which, unlike a mere receipt not under seal, cannot be controlled by parol evidence of the intention of the parties. Indeed, a release, by its own operation, extinguishes a pre-existing right, and cannot be controlled or explained by parol. * * * A release, therefore, shall be held to include all demands embraced by its terms, whether particularly contemplated or not; and parol evidence is not admissible to show that a certain claim was not in the minds of the parties."

To sanction allegation, as a predicate for evidence, in qualification or contradiction of the unambiguous terms of this release—in a court of law without jurisdiction to reform contracts—would be but an evasion, as said in Sherburne v. Goodwin, supra, of the "rule that forbids the introduction of parol evidence to contradict a written instrument."

The doctrine is too familiar, too sound in its reason, and too conservative and just in its results, to be the subject of doubt or reconsideration at this late day. No court could have more consistently adhered to its observance than has this court.

[10, 11] Since the release covered, by its all-inclusive terms, the wrongs declared on, and since these comprehensive terms cannot be contradicted by parol or an exception or exceptions ingrafted or interposed through allegation as an inducement to evidence outside the writing, the plaintiff (Barbour) was confronted with the necessity, if he would prevail against his release, to avoid the obligation he therein, for a consideration, assumed (whereby he invested the defendant with the correlative rights thereby assured), of rescinding the contract upon the ground of fraud, mistake, etc. But, in order to rescind for fraud the party desiring to rescind must seasonably do so, and, besides, he must restore that which he has received under the contract or else, in discharge of the primary duty, he must appropriately assert such facts and circumstances as, in legal contemplation, excuse him from the discharge of this primary duty. There are cases to the contrary in other jurisdictions, as we stated in the original opinion; but here the rule has been repeatedly reiterated and its correctness recognized, even down to the recent deliverances made in Betts v. Ward, 196 Ala. 248, 251, 72 South. 110; Beatty v. Palmer, 196 Ala. 67, 71 South. 422; B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280. In the last-cited decision it was said, upon abundant authority there cited:

"The person who would disaffirm a fraudulent contract must return whatever he has received under it. *This is on a plain and just principle.*

He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must *rescind in toto, if at all.*" (Italics supplied.)

And writing to the replication in that case it was further declared:

"She cannot compel the defendant to litigate with her as to a part of the subject-matter of the release, and at the same time insist on holding to the consideration. The replication was therefore bad for failing to aver that the money was restored or offered to the defendant within a reasonable time after the discovery of the fraud. If she did not know of the fraud until the plea was filed, she should have tendered it with the replication."

The rule is settled in this jurisdiction, and no sound reason has been suggested why the present case should be excepted from its operation.

[12, 13] The insistence that this plaintiff (appellant) does not seek to rescind, but simply to eliminate, because of fraudulent imposition, the claim declared on from the operation and effect of the all-inclusive terms of this release, is but the statement of the same contention in another form. Contracts induced by fraud are not absolutely void; they are voidable only. The plaintiff, for a consideration, in writing released defendant from all possible liabilities in respect of the sales of the stock. To exclude from its exonerating effect a liability that, unless the release is contracted in its operation, has been extinguished, for a consideration, can only be accomplished by a reformation of the instrument or a rescission in toto of the contract, as our cases decide. To allow, in a court of law, the alteration of the certain effect of the terms of this release upon allegation and proof that the liability desired by the releasor to be excepted from the instrument's operation was the product of the releasee's fraud in respect of the contract of sale, not in the execution of the release, would be unwarrantably to extend the jurisdiction of the court of law into the field of equity; to sanction averment as an inducement to, and predicate for, the adduction of evidence to contradict or qualify by parol and unambiguous writing; and to accord relief against a release, valid on its face, that has not been efficiently rescinded. In this state the distinction between the jurisdiction of the courts of law and the courts of equity has been maintained; and this is particularly true with respect to reformation of instruments. In this state a court of law cannot reform a writing; only a court of equity can award that relief. Not so in New York. There, as the Kirchner Case, supra, discloses, a plaintiff in a court of law can establish his right to relief, in the face of an unambiguous release through the means of "whatever

proofs would be regarded as sufficient to enable the plaintiff to maintain an action for the reformation of the release, so as to except from its provisions the demand in suit." To apply that doctrine to the present case would require the abolition of the distinction between the jurisdiction of our courts of law and equity, as well as repudiate the rule that forbids the contradiction or qualification of a writing by parol.

[14] The doctrine, illustrated in Maxwell v. Sherman, 172 Ala. 626, 55 South. 520, that permits one fraudulently imposed upon or deceived in a contract of sale either to sue for damages or to rescind, does not touch the present contest that is controlled by the dominating factor of a release that, unless avoided in an appropriate way, extinguished the liability upon which the plaintiff declares. Until avoided in some appropriate way, the effect of the release was to extinguish the liability declared on, regardless of the form in which that liability is sought to be enforced.

[15] It is also insisted that the fraud alleged should be accorded the effect to estop the defendant (appellee) from having the benefit of the release from the liability declared on. In other words, that, though the release operated by its all-inclusive terms to extinguish the liability declared on, the defendant should not be permitted, because of the fraudulent wrong declared on, to avail of the exoneration effected by the release. The estoppel thus asserted presupposes the right in the plaintiff to introduce, through parol, an exception into the release, to qualify and restrict the terms of the release in a court of law—a process that would be but the reformation of the instrument in a tribunal that, under our system, cannot exercise that authority. Furthermore, the recognition of the estoppel asserted would exempt the plaintiff from the primary duty to rescind and restore. B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 537, 538, 54 South. 280.

The application for rehearing is denied.

ANDERSON, C. J., and McCLELLAN, MAYFIELD and SOMERVILLE, JJ., concur in the opinion on rehearing.

SAYRE, J., concurs as stated.

THOMAS, J., concurs in the conclusion.

GARDNER, J., dissents.

SAYRE, J. (concurring). Ex majore cantela I desire to state my opinion that any reply to the release setting up fraud in its procurement, properly pleaded, would be as avoidable in the law court as in a court of equity. No special proceeding to avoid the release on the ground of fraud would be necessary. I do not know that there is any difference of opinion among us on this point, though I am adding this special concurrence because I fear some expressions in the leading opinion may be construed to the contrary.