Merrimack, }
Feb. 2, 1915. }

## William McIsaac  v.  Harry G. McMurray.

Courts of equity have exclusive jurisdiction to reform and rescind written contracts which, by reason of mistake, fail to express the intention of the parties thereto.

In a proceeding for the reformation of a written contract on the ground of mistake, parol evidence is admissible to vary and contradict the terms of the agreement; but the alleged mistake must be established by proof which is at least strong enough to overcome the presumption that the written instrument contains the essential terms of the contract.

The plaintiff in a suit for personal injuries must first obtain relief in equity from the effect of his general release before attempting to charge the defendant in an action at law for the consequences of the latter's negligence; and in such case an allegation of fraud and mistake, filed in answer to a brief statement setting up the release, may be treated as a bill in equity praying for a removal of the impediment to the maintenance of the action at law.

In the intrepretation of an agreement in compromise of disputed claims, the intention of the parties, when properly ascertained, furnishes the test by which their contractual rights and liabilities are to be determined; and where there is a mutual mistake in reference to a material matter covered by such an agreement, equity affords relief as readily as in the case of other contracts.

Where the purpose of an agreement for compromise was simply to avoid future controversy with reference to liability for an accident, a mistake by the injured party as to the extent of his damages is immaterial and furnishes no ground for setting aside a release; but if the intention was to compensate the releasor, the fact that at the time of the settlement both parties were justifiably ignorant of the existence of a serious injury constitutes a material mistake which may warrant a cancellation of the agreement.

Case, for personal injuries alleged to have been caused by the negligence of the defendant in driving his automobile upon the plaintiff, who was riding a bicycle. Transferred from the April term, 1914, of the superior court by *Branch*, J.

The defendant pleaded the general issue, with a brief statement setting up a release of the plaintiff's cause of action. The material part of the release is as follows: "I, William McIsaac, . . . for and in consideration of the sum of seventy-five dollars . . . to me in hand paid by Harry McMurray, . . . the receipt whereof is hereby acknowledged, . . . remise, release, and forever discharge the said Harry McMurray, his successors and assigns, of and from all and all manner of actions, suits, damages, judgments, executions, claims, and demands whatsoever, in law or in equity,

which against the said Harry McMurray, arising out of an automobile collision occurring September 1, 1912, I ever had, now have, or which my heirs, executors, or administrators hereafter can, shall, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the day of the date of these presents." The foregoing instrument was signed and sealed by the plaintiff on September 17, 1912.

The plaintiff filed an answer to the defendant's brief statement, alleging in substance that the release is fraudulent, was made under a mutual mistake of fact, and is void; that the physicians for both parties assured the plaintiff previous to the date of the release that his injuries were not serious, consisting of bruises, that no bones were broken, and that he would soon be able to resume his occupation; that both parties acted under a mutual mistake of fact as to the extent and nature of the plaintiff's injuries, which in fact consisted of a fracture of the neck of the femur of the left hip, and that this injury was unknown to either party when the release was executed.

After the plaintiff's counsel had opened the case to the jury upon the grounds of the above answer, the court ordered a nonsuit, on the assumption that the plaintiff's evidence would sustain his claim that both parties supposed at the time of the settlement that the injuries consisted of simple bruises only. To this order the plaintiff excepted.

*George V. Hill* and *Martin & Howe* (*Mr. Howe* orally), for the plaintiff.

*Jones, Warren, Wilson & Manning* (*Mr. Manning* orally), for the defendant.

WALKER, J. The language of the release is sufficiently broad to cover all the damages suffered by the plaintiff in consequence of the collision and to preclude the plaintiff from maintaining an action against the defendant therefor. Its execution is admitted and its legal construction as constituting a bar to the plaintiff's action is not denied. But it is argued that it was entered into under mistake, made by both parties, in reference to a material matter of whose existence they were justifiably ignorant, and that the release would not have been made if that fact had been known and appreciated. The plaintiff, therefore, is practically seeking to have the release set

aside, in order that he may proceed with his action at law. The superior court granted the defendant's motion for a nonsuit, and the plaintiff excepted.

One question presented by the exception is whether the plaintiff may have relief for the alleged mistake by a practical cancellation of the release, found to be equitable by the verdict of a jury in an action at law, or whether the fact of the mistake and its effect upon the contract should not be tried in an equitable proceeding in aid of the suit at law. It cannot be doubted that the jurisdiction in equity in relation to the subject of mistake in written contracts is ample and convenient. "The power of a court of equity to correct mistakes of fact is a very wide and general one." Bisp. Eq. (7th ed.), s. 190. "Cases in which the remedy sought and obtained is one which equity courts alone are able to confer must, upon any consistent system of classification, belong to the exclusive jurisdiction of equity." 1 Pom. Eq. Jur., s. 138. "But a mistake in a deed or other written instrument may be rectified in equity. And where an instrument is drawn and executed, which is intended to carry into effect a previous agreement, but which, by mistake of the draftsman, either as to fact or law, does not fulfil that intention, equity will correct the mistake." *Webster* v. *Webster*, 33 N. H. 18, 22. Where there is a mutual mistake in regard to the quantity of land included in a deed, equity affords the appropriate remedy. *Newton* v. *Tolles*, 66 N. H. 136.

*Stebbins* v. *Robbins*, 67 N. H. 232, was a writ of entry to foreclose a mortgage which had been discharged through a mistake as to the extent of the mortgaged property. Upon the suggestion that the plaintiff's remedy was in equity, the plaintiff was permitted to file an amendment to the declaration in the nature of a bill in equity. In *Eastman* v. *Association*, 62 N. H. 555, it was held that when the beneficiary of life insurance is to be named in an entry on the member's certificate, or on a book of the association, and there is no such entry, parol evidence is not admissible in a suit at law to show to whom the member intended the benefit should be paid. But upon a subsequent bill in equity between the same parties (65 N. H. 176), such evidence was admitted to show that a mistake of law was made at the time of the contract as to the effect of not naming the beneficiary.

Although one reason of the rule is that the remedy sought in cases of mistake in written instruments is peculiarly applicable to proceedings in equity, relief in most cases could not be obtained at

law, because parol evidence which tends to vary and contradict such a writing is not admissible, while in equity it is. "A written contract that does not express the intention of the parties may be reformed in equity; but in this suit at law the policy cannot be altered by parol evidence." *Tasker* v. *Insurance Co.*, 59 N. H. 438, 445. "It is an elementary doctrine that parol evidence is not, in general, admissible between the parties to vary a written instrument, whether the same has been voluntarily adopted, or made in pursuance of a legal necessity. It is equally well settled that mistake, fraud, surprise, and accident furnish exceptions to this otherwise universal doctrine. . . . This exception rests upon the highest motives of policy and expediency; for otherwise an injured party would generally be without remedy." 2 Pom. Eq. Jur., *s.* 858.

In *Tilton* v. *Tilton*, 9 N. H. 385, 392, this principle of equity is stated as follows: "In our opinion, a court of equity is competent to correct and reform any material mistake in a deed or other written agreement, whether that mistake be the omission or insertion of a material stipulation; and whether it be made out by parol testimony, or be confirmed by other more cogent proofs. . . . This principle is apparently at variance with a well established rule of evidence, observed equally in courts of law and of equity, and resting upon the most satisfactory reasons; that when the parties have reduced their agreement to writing, the written instrument is the only admissible evidence of the terms of that contract, and is not to be controlled, added to, altered, or varied by parol. Fraud is, however, an exception to the rule; and so, in our judgment, is a case of mistake clearly made out. For it would be a reproach to the jurisprudence of the country, if it were not in its power to relieve from the consequences of a mistake unequivocally established. But the mistake must be made out in the most clear and decided manner, and to the entire satisfaction of the court." See, also, 1 Sto. Eq. Jur., *s.* 156; *Busby* v. *Littlefield*, 31 N. H. 193; *Minot* v. *Tilton*, 64 N. H. 371; *Searles* v. *Churchill*, 69 N. H. 530.

In *Sherburne* v. *Goodwin*, 44 N. H. 271, 277, it is said: "It is urged also for the plaintiffs that if the terms of the release are such as to include this fund it is a mistake, and that the release should be reformed. But independent of the question whether any such mistake is shown as would entitle the party to this sort of relief, it is quite clear that it could be granted only upon proceedings instituted for that purpose, and under such circumstances as would enable the court to do justice to both parties, and not by simply

excluding from the effect of the release the particular demand, and thus evading the rule that prohibits the introduction of parol evidence to contradict a written instrument."

Another reason why relief for mistake in a written contract should be sought in equity is that courts of equity seem in such case to have adopted a more stringent rule as to the burden of proof or the weight of the evidence than obtains at law, in order probably to show that in equity the parol evidence rule is recognized and is not to be lightly set aside. This principle was considered in *Searles* v. *Churchill, supra*, where it was held that a written instrument will be reformed in equity when it fails to express the intention of the parties in making the contract which it purports to contain; and to warrant such decree, the mistake alleged must be established as matter of fact by clear and convincing proof. *Tilton* v. *Tilton, supra; Busby* v. *Littlefield, supra; Wiswall* v. *Harriman*, 62 N. H. 671; *Healy* v. *Healy*, 76 N. H. 504. It is unnecessary in this discussion to attempt to define what is meant by "clear and convincing proof"; it is sufficient to note that it must at least be strong enough to overcome the presumption that the written instrument contains the essential terms of the contract, upon which presumption the rule excluding parol evidence of the intention of the parties is based. *Howland* v. *Blake*, 97 U. S. 624, 626.

In view of the uncontroverted fact that the remedies of rescission and reformation of contracts entered into in consequence of the mutual mistakes of the parties fall primarily and naturally within the peculiar jurisdiction of equity, and in view of the further fact that the principles governing equitable procedure in such cases are better adapted to the ascertainment of truth and the accomplishment of substantial justice, it cannot be doubted that the plaintiff must first obtain relief in equity from the effect of his general release, before attempting to charge the defendant in an action of tort for the consequences of the latter's alleged negligence.

The plaintiff's exception to the ruling of the superior court ordering a nonsuit must, therefore, be overruled. But under the liberal procedure adopted in this jurisdiction, his answer to the defendant's brief statement may be treated as a bill in equity, in which relief is sought to remove the impediment created by the release to the maintenance of his action at law. *Stebbins* v. *Robbins*, 67 N. H. 232. The question would then be whether upon those allegations relief could be granted.

If it is assumed that the plaintiff's allegations are true, they show

that after the accident the parties attempted to settle the controversy arising out of the accident and to avoid litigation in regard to it. Having come to an agreement, and in consideration of the payment of the sum agreed upon, the plaintiff executed the release, the terms of which were broad enough to accomplish their purpose and to finally end further contention and litigation between the parties upon that subject. As before suggested, it was an executed compromise agreement of all the claims of the plaintiff against the defendant growing out of the accident, including the question of liability as well as the question of the plaintiff's compensation for his injuries. That is the legal effect of the written contract.

It is also to be noted that courts have shown a special disposition to sustain compromises of disputed claims, often without much regard to the injustice resulting from the stipulations agreed to. It is often said that such agreements are looked upon with great favor, as their tendency is to diminish litigation. "A settlement of a controversy is valid, not because it is the settlement of a valid claim, but because it is the settlement of a controversy. Such settlements are favored by the law; and when an action is brought on a promise made on such a settlement, it is no answer to show that the claim was not valid." *Flannagan* v. *Kilcome*, 58 N. H. 443, 444; *Thompson* v. *Currier*, 70 N. H. 259, 265, 267; *Dailey* v. *King*, 79 Mich. 568; *Demars* v. *Company*, 37 Minn. 418. Pomeroy (2 Eq. Jur., s. 850) uses the following language: "Voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge, or means of obtaining knowledge, concerning the circumstances involving these rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they thus voluntarily enter must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision." This general doctrine is universally approved and followed. *Pitkin* v. *Noyes*, 48 N. H. 294, 304; *Borden* v. *Railroad*, 110 Me. 327; *Parr* v. *Greenbush*, 112 N. Y. 246; *Grandin* v. *Grandin*, 49 N. J. Law 508; *Heaps* v. *Dunham*, 95 Ill. 583; *Henry* v. *Company*, 42 Ia. 33; *Kowalke* v. *Company*, 103 Wis. 472; *Brooks* v. *Hall*, 36 Kan. 697; *Colton* v. *Stanford*, 82 Cal. 351; *Daly* v. *Company*, 129 Fed. Rep. 513; 1 Sto. Eq. Jur., s. 131. But it is to be feared that in some cases this principle has been

allowed to obscure the evident fact that a compromise is nothing more than a contract.

The interpretation of a contract of compromise or settlement of disputed claims is not so peculiar and anomalous as to require the court to disregard the intention of the parties and give it a significance never contemplated by them. The fact that courts may look upon such contracts with some degree of favor or commendation is not of much legal evidentiary force in the judicial work of construing them in accordance with the intention of the parties, as ascertainable from competent evidence. If their purpose is to settle and compromise one matter in dispute between them, and that purpose is admitted or ascertained in a legitimate manner, their written contract, which by justifiable mistake embraces other matters in dispute, ought not in equity to be allowed to have that unconscionable effect. "A compromise will not include existing matters which the parties did not intend to settle." Hunt Acc. & Sat., *s.* 92. The mere fact that compromise contracts are sometimes said to be regarded with favor by the courts does not invest them with any peculiar sanctity, nor give rise to new rules and principles in their interpretation and enforcement, either at law or in equity. It is the intention of the parties, when properly ascertained, that furnishes the test by which their contractual rights and liabilities are to be determined, whether the transaction is called a sale, an executory agreement, or a compromise. *Searles* v. *Churchill, supra.* It is, therefore, no exaggeration to say that equity affords relief when there is a mutual mistake in reference to a material matter covered by the contract, as readily in the case of a compromise as in the case of any other contract. It does not refuse relief upon grounds of mere terminology.

The mistake in this case, according to the plaintiff's allegations, consisted in the fact that while his apparent injuries were represented by slight bruises, the unapparent and more serious injury was a fracture or dislocation of the hip. And it is claimed that the settlement was made with reference to the bruises alone, because the injury to the hip was unknown and was not discoverable at that time by the exercise of ordinary care, even on the part of the examining surgeons. Although somewhat remarkable, this statement must be deemed to be true for the purposes of the present inquiry. Upon these facts, the question arises whether the mistake related to a matter that was material to the contract of settlement. The fact that the parties were justifiably ignorant of the serious injury

to the plaintiff's hip does not alone show that the mistake was in
respect to a material matter.    Whether it was or not depends upon
the intention of the parties in making the contract.    If their purpose
was to terminate all dispute and litigation between them in reference
to the defendant's liability for negligence in causing the plaintiff's
injuries and for the resulting damages, including both the known and
unknown,—in other words, if the money was paid by the defendant
and received by the plaintiff simply to avoid further controversy
and not as compensation for the plaintiff's injuries,—the mistake
as to the extent of his injuries would be immaterial.    They may
have negotiated upon the mutual understanding that it was doubt-
ful who was to blame for the accident and what the plaintiff's
injuries might turn out to be, and that in order to avoid litigation
upon those questions the amount agreed upon should be deemed a
sufficient consideration under the circumstances for the plaintiff's
general release. ' In such a case, evidence of the amount of the con-
sideration or of the merits of the controversy in regard either to the
general question of liability, or the more special question of the
damages, will not be received in a court of equity; for it is plain
both parties intended to take the risk of loss as it might thereafter
appear.    "The general ground upon which all these distinctions
proceed is, that mistake or ignorance of facts in parties is a proper
subject of relief only when it constitutes a material ingredient in the
contract of the parties and disappoints their intention by a mutual
error."    1 Sto. Eq. Jur., s. 151; *McDaniels* v. *Bank*, 29 Vt. 230;
*Currier* v. *Bilger*, 149 Pa. St. 109; *Seeley* v. *Company*, 179 Pa. St. 334;
*Kowalke* v. *Company*, 103 Wis. 472; *Galusha* v. *Sherman*, 105 Wis.
263, 268.

But while it is probable that the parties thought they were settling
the whole matter, and therefore adopted a form of release which
was ample for the accomplishment of that purpose, it is not impos-
sible that it may be found that their mistake or innocent ignorance
in regard to the existence of the fracture of the plaintiff's hip was
material upon the question of the amount of money which they
agreed should be paid in settlement of the controversy.    If that
amount was to depend upon, or was in some degree to be commen-
surate with, the existing injuries, the serious injury of the hip, though
unknown, would have a material bearing upon the amount of the
payment and would, but for the mistake, have been taken into
account.    Suppose the defendant had admitted his liability, and
the only matter in controversy had been the amount of damages

the plaintiff was entitled to for the injuries he had received.   Of course, in most cases of this character the actual damage is problematical and can only be approximately determined by the exercise of judgment.   But before an intelligent judgment can be formed upon that subject, a knowledge of the existing facts relating to it is necessary.   In the case supposed, the fact that the parties, without any fault or negligence on their part, were ignorant of the injury to the hip, and determined the amount of compensation to be paid to the plaintiff from an examination of the superficial bruises only, would authorize a finding that the contract of settlement should be set aside.   The mistake was mutual and related to a very material element of damage; and the contract, if enforced, would defeat the clear intention of the parties as it existed at the time the contract was made.

But whether the defendant admitted or denied his liability, the same principle would apply, if it was the purpose of the parties to fix upon a sum determined by the existing physical evidence of the injuries suffered; and as the mistake would relate to a material matter, the release should be set aside.   This would be the necessary result because it cannot be said that the plaintiff would have been satisfied with the sum he did receive, or that the defendant would have been unwilling to pay a larger sum, if they had known of the dislocated hip.   The court cannot make a contract for them.

The plaintiff's allegations seem to be sufficient to support a decree for a cancellation of the release.   But the burden is upon him to prove the mistake and its materiality by evidence sufficient, at least, to overcome the presumption that the language of the release expresses the intention of the parties and ought therefore to be given its full legal effect.

By the industry of counsel, our attention has been directed to a large number of authorities, in addition to those already cited, in other jurisdictions, having a more or less important bearing upon the effect of mistakes made in the attempted settlements or compromises of claims for personal injuries.   Upon examination, many of them are found to be not in point.   Some, as finally disposed of, do not involve the question of mistake as a topic of equitable jurisdiction, but are based entirely upon a legal construction of the language of the release, by which its general or inclusive effect is limited by the enumeration of special purposes (*Texas etc. Ry.* v. *Dashiell*, 198 U. S. 521; *Union Pacific Ry.* v. *Artist*, 60 Fed. Rep. 365; *Lumley* v. *Railroad*, 76 Fed. Rep. 66); others are decided upon

the ground of fraud or misrepresentation as to the extent of the injuries, by the defendant's physician or surgeon (*Tatman* v. *Railroad* (Del. Ch.) 85 Atl. Rep. 716; *Nelson* v. *Railway*, 111 Minn. 193; *St. Louis etc. Ry.* v. *Hambright*, 87 Ark. 614; *Great Northern Ry.* v. *Fowler*, 136 Fed. Rep. 118); and still others involve a consideration of the question whether the mistake related to a matter of opinion as to the severity of a known injury, as distinguished from ignorance of the existence of a distinct and independent injury. *Currier* v. *Bilger*, 149 Pa. St. 109; *Seeley* v. *Company*, 179 Pa. St. 334; *Chicago etc. Ry.* v. *Wilcox*, 116 Fed. Rep. 913.    It is probably true that a mistake in forming an opinion upon fully disclosed facts furnishes no ground for the interposition of equity.    This idea is well expressed in 34 Cyc. 1058, 1059, as follows: "A release may . . . be avoided for a mutual mistake of a past or present fact, material to the agreement; but such an effect is not produced by a mistake in prophecy or in opinion, or by mistake in belief relative to an uncertain future event, as, for instance, the probable developments from and permanency of a known injury.    Nor does conscious ignorance of a fact amount to mistake."    Cases relating to this subject are not authorities in this case, as, for instance, *Hecht* v. *Batcheller*, 147 Mass. 335; *Wood* v. *Boynton*, 64 Wis. 265.

The case of *Houston etc. R. R.* v. *McCarty*, 94 Tex. 298, relied upon by the defendant, is not in harmony with the views above expressed.    It seems to disregard the fundamental principle, which is of controlling importance in this state, that a court of equity will afford relief when parties have bound themselves by a written contract executed in justifiable ignorance of a past and existing fact, which is so material to the subject-matter of the contract that if it had been known the contract would not have been made.    It goes upon the ground that the compromise related exclusively to the plaintiff's cause of action and was not based in any material respect upon the injuries he received.    Because there was but one cause of action, the court say (*p.* 303): "If the plaintiff had sued and recovered for the injuries of which he had knowledge at the time of the release, he would have been precluded from an additional remedy." But it is clear that if that is so, it would be in consequence of the doctrine of the conclusiveness of judgments, based largely upon the ground of public policy and convenience, and not because a mutual material mistake of the parties in entering into a contract may not afford ground for equitable relief from the legal consequences of its terms.    In the present case, it is unnecessary to consider what

the situation would be if the plaintiff had obtained a judgment in ignorance of a material element of damage.

If, as the plaintiff alleges, the statement of the defendant's physician that the plaintiff's injuries were slight and that no bones were broken was fraudulently made for the purpose of bringing about a compromise, and the plaintiff relied upon that representation when he executed the release, a distinct claim for relief would be presented which it would not be useful to discuss at this time.    Upon the present state of the case, the order is,

*Exception overruled.*

All concurred.