L. B. STUART et al., Appellees, v. T. G. WHITE, Appellant.

**COMPROMISE AND SETTLEMENT:** Retention of Benefits. A party may not repudiate a compromise and settlement *while retaining all the benefits and advantages thereof.*

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

SEPTEMBER 30, 1921.

ACTION in equity for an accounting. Decree and judgment as prayed. Defendant appeals.—*Reversed.*

*Crissman & Linville,* for appellant.

*F. L. Anderson,* for appellees.

STEVENS, J.—In December, 1911, the parties to this suit entered into an oral agreement for the formation of a copartnership at Cedar Rapids, Iowa, to be known as the Handy Sack Baler Company, for the manufacture and sale of a cement sack baler. The agreement provided that each of the partners would contribute equally to the capital of the business, without designating an amount, and that they would share the profits and losses in the same proportion.

The original device for baling sacks was the joint invention of the plaintiff Stuart and the defendant, White, and the patent was issued in their joint names. The defendant, however, later

invented an improvement, and obtained a patent thereon in his own name. The nature of the baling device patented in the name of Stuart & White, and of the improvement patented in the name of the defendant, is not material.

This action was brought for an accounting, and to compel the defendant to turn over to the plaintiffs two thirds of the aggregate sum of $1,903.13, which plaintiffs allege the defendant wrongfully appropriated to his own use from the assets of the copartnership, as follows: October 31, 1917, $1,550.60; December 31, 1917, $329.13; February 26, 1918, $23.40.

The answer of the defendant admits the receipt of the above sums on the dates stated, but alleges that, by a modification of the partnership agreement, and by the acts and conduct of the partners in the management and transaction of the partnership business, he became the owner of and entitled to one half of the assets and profits thereof, and that the above sums were appropriated by him in payment of a royalty for the use by the copartnership of the improvement patented by him, and used in the manufacture of the baler.

The court below found that the defendant should account to the plaintiffs for two thirds of the amount claimed; and judgment for $1,266, with interest from the date of the filing of the petition, was entered against him therefor.

More than a year before the commencement of this action, plaintiffs, appellees herein, instituted a suit against the defendant, appellant herein, in the superior court of Cedar Rapids, Iowa, for an accounting of the business and assets of the copartnership, alleging in their petition that the defendant therein was claiming a one-half interest in the assets and profits of the concern, instead of one third, to which he was entitled under the oral contract of partnership, and praying that he be required to account to the plaintiffs for two thirds of the assets and profits of the business, and that the patent issued to him upon the improvement referred to above be decreed to be the property of the copartnership. The ground upon which this relief was sought was that the parties, at the time of forming the copartnership, had agreed that defendant, who was possessed of inventive genius, and who was to manufacture the baler, should be paid a salary of from $3.50 per day to $150 per month, and that dur-

ing his employment he was to perfect the baler for the benefit of the firm, and that whatever improvement he made thereon would be for the benefit of the copartnership. The issue as to the ownership of the patent taken out on the improvement in the name of White, and as to the alleged equitable ownership thereof by the copartnership, was, upon motion of the defendant, stricken by the court, upon the ground that it was without jurisdiction to pass upon or decide the same.

On May 18, 1918, the day on which the suit in the superior court was assigned for trial, the parties entered into a stipulation in writing for the compromise and settlement thereof, as follows:

"It is hereby agreed and stipulated, as a compromise and settlement of this suit, as follows:

"Mr. T. G. White hereby sells to L. B. Stuart and J. C. Fulkerson all of his interests in the assets and business of the copartnership of the Handy Sack Bailor Company, for the sum of one thousand dollars ($1,000), excepting that the said White does not sell or convey any interest which he owns in the U. S. patents No. 1,130,780, and 1,042,544. And any other patent right. The interest, if any, of all the parties to this suit are not adjudicated or prejudiced by this settlement.

"Each of the parties to this suit to pay one third of the court costs."

The defendant in the present action set up this compromise and settlement as a defense to plaintiff's cause of action. By way of amendment to their petition, plaintiffs in this action allege that, on the day the stipulation referred to above was entered into, the defendant in the action in the superior court designedly and fraudulently, and for the purpose of deceiving plaintiffs, wrongfully withheld from them any information pertaining to the withdrawal from the assets of the copartnership of the several sums of money in controversy; and that the said sums were, in fact, the property and a part of the assets of the copartnership. Other issues are involved in the present controversy, but, in view of the conclusion hereinafter announced, it is unnecessary to refer further thereto. Counsel have ably discussed the case upon its merits; but as, in our opinion, the stipulation entered into on May 18, 1918, for the purpose of compromising and settling the action then pending in the superior court, is vital and

controlling, we make no further reference thereto. Upon the question of the merits of defendant's claim to compensation for the use of the patented improvement and to the ownership of one half of the assets and profits of the copartnership, we express no opinion, further than to say that the record discloses an apparently good-faith controversy between the parties as to these matters.

The compromise and settlement of disputed claims and suits based thereon are universally favored (*Owens v. Norwood-White Coal Co.*, 157 Iowa 389; *McIsaac v. McMurray*, 77 N. H. 466 [93 Atl. 115]), and when entered into upon a valid consideration, will be upheld by the courts, although the claim may not be a valid one or enforcible at law or in equity. *Keefe v. Vogle*, 36 Iowa 87; *Greenlee v. Mosnat*, 116 Iowa 535; *Rowe v. Barnes*, 101 Iowa 302; *Logsdon v. Moffitt*, (Iowa) 159 N. W. 182 (not officially reported); *Cantonwine v. Bosch Bros.*, 148 Iowa 496; *McIsaac v. McMurray*, supra.

Plaintiffs do not ask that the stipulation compromising and settling the action for an accounting in the superior court be set aside, and the status previously existing restored, but seek to retain whatever benefit or advantage accrued to them thereby, and to further compel the payment by the defendant of two thirds of the amount in controversy. The record before us shows that the stipulation was signed, filed, and entered in full upon the judgment docket, and its terms fully carried out and executed by the parties. Neither argument nor the citation of authority is necessary to sustain the contention of counsel for appellant that the compromise and settlement is conclusive and binding upon all of the parties according to its terms and provisions. The only issue presented by the record at the time of the settlement was that of an accounting, and this included all the claims of both parties. The expressed purpose of the stipulation was "the compromise and settlement of this suit:" that is, the action then pending in the superior court. The effect thereof was to compromise and settle all matters involved in that litigation, unless the provision therein that "the interest, if any, of all the parties to this suit are not adjudicated or prejudiced by this settlement" shall be construed as an expression of an intention to the contrary, or unless appellees have shown themselves en-

titled to relief upon the ground of fraud. It is too manifest for argument that the parties intended the stipulation to be a final settlement and adjudication of their interest in the assets and business of the copartnership, except the patents.

The fact that the defendant agreed to sell and convey all his interest in the business and assets of the company to plaintiffs, and that they agreed to, and did, pay him the sum of $1,000 therefor, is sufficient upon this point. The specific exception mentioned in the stipulation related to the interest of the respective parties in and to the patents, and it seems to us that the provision that "the interest, if any, of all the parties to this suit are not adjudicated or prejudiced by this settlement," following the reference therein to the patents, must be held to refer thereto, and not to the compromise and settlement of the interest of the parties in the assets and business of the concern.

But it is also argued by counsel for appellees that, as the sums in controversy were legally a part of the assets of the copartnership, and had been wrongfully appropriated by appellant, title thereto passed, by the terms of the stipulation, to plaintiffs. Appellees do not, however, in their petition claim more than a two-thirds interest therein; and it is obvious, from a review of the evidence, that appellant did not intend, by the terms of the stipulation, to sell or transfer to the plaintiffs the money that had been already appropriated by him as compensation for the use of the patent, and that they did not so understand the agreement. While this is not mentioned or referred to in the pleadings filed in that case, White, prior to May 18th, charged the copartnership, upon both the daybook and the ledger of the copartnership, with the items in controversy, and credited himself therewith.

The fraud charged by plaintiffs on the part of the defendant is that he designedly and wrongfully concealed from them the fact that he asserted a claim to compensation for the use of the patent, as well as the fact that he had already paid himself therefor out of the funds of the company. Appellees testified that they did not know, either of White's claim to a royalty or that he had paid same to himself, until about 30 days·after the compromise and settlement was entered into. The record, however, shows a conflict in the evidence as to just what information

they had. The defendant testified that he told both of the plaintiffs that he expected a royalty on his patent, but he does not claim that he orally informed them that he had paid himself any part thereof out of funds of the company. The books of the copartnership, which were kept by White, together with an invoice and statement of the assets, liabilities, and expenses of the copartnership, were brought into court for the examination and use of plaintiffs on the day the stipulation was signed, and before the signing. The separate expense account furnished by the defendant did not show the specified items in controversy, or that a sum had been appropriated as compensation for the use of the patent; but the entries upon both the daybook and the ledger were full and complete, and showed that fact. Plaintiffs further testified that they inquired of the defendant as to what had become of certain money, amounting to about $2,400, belonging to the company, that had come into his possession, and that he replied that same had been expended for various purposes, not, however, including in the items mentioned the charges for royalty. It is not, however, claimed by appellees that any untruthful statements were made to them by appellant. If, therefore, appellees were induced to enter into the stipulation by fraud upon the part of appellant, it must have consisted of his failure to mention his claim for royalty, or the payment thereof out of the funds of the copartnership. Appellees knew exactly what the assets of the company otherwise consisted of, and received all that was openly agreed on between the parties. The books were in court for the inspection of appellees, and the evidence tends to show that they in fact made an inspection thereof, prior to May 18th, and after the item of October 31, 1917, had been entered thereon. As stated, the record discloses that there was a good-faith controversy between the parties, and that the settlement and compromise entered into was fully carried out. It would be manifestly inequitable to permit the plaintiffs in this action to retain all of the benefits and advantages of the settlement, and at the same time recover two thirds of the amount then claimed by White, and in his possession. Whether or not the facts disclosed would entitle plaintiffs to have the compromise and settlement set aside, and the status previously existing restored, we are not called upon to decide. The evidence

tends to show that the value of the assets of the copartnership referred to in the invoice and turned over to appellees at the time the stipulation was signed was somewhat in excess of $3,000. On the basis of the defendant's claim to one half thereof, it is apparent that he made some concession in the settlement, and that the $1,000 paid to him represented less than the probable value of his interest therein.

It is our conclusion that the compromise and settlement entered into and carried out between the parties is final and binding until set aside, and that appellees are not entitled to recover from the defendant in this action any portion of the amount in controversy. It follows that the decree and judgment of the court below must therefore be, and are,—*Reversed.*

Evans, C. J., Weaver, Preston, and Arthur, JJ., concur.

Faville and De Graff, JJ., dissent.