On the evening of November 17th, 1935, complainant was injured by reason of being struck by an automobile. On *Page 65 
November 25th, 1935, she executed a release to the defendant Kartzmark and she now seeks a surrender and cancellation thereof, alleging (a) fraud in its procurement and (b) that a mutual mistake was made with respect to the injuries which she says were the basis of the settlement between the defendant and herself.
As to fraud. Complainant has failed to prove this element of her case. It clearly appears that the procurement of the release was not unduly hastened and that it was executed by complainant with full knowledge of its purport, with ample time on her part to consider its advisability and after a discussion of the effect of possible litigation. It was also executed after she had consulted with her own physician, who advised her as to the nature and extent of her injuries.
The release on its face recites in bold type at the top thereof "Release in Full of All Claims" and, in a raised letter black box at the left of her signature, "This is a Release in Full." The language of the release is:
"forever discharge Roy M. Kartzmark from any and all claims and demands, which I now have or may hereafter have by reason of all injuries and other damages sustained by me."
The releasee denied liability.
It will be noted that the release in question is, in its terminology, sufficient to indicate that what the parties sought to accomplish by its execution was to end, once and for all, any contention between the parties as to compensation for injuries and possible litigation. It was a compromise of all the claims of complainant against the defendant growing out of the accident, including the question of liability as well as that of compensation for injuries, but it was nevertheless a contract of compromise and in the event of a mutual mistake having been made by the parties as to a past or present fact which was material to the contract, equity should grant and not refuse relief by reason of mere terminology of the contract, unless it clearly appears from the compromise contract that the consideration was paid by defendant to complainant and received by her simply to avoid further controversy, and not as a compromise of complainant's injury, in which event *Page 66 
any mistake as to extent of injuries would be immaterial. SeeMcIsaac v. McMurray, 77 N.H. 466; 93 Atl. Rep. 115.
The injuries sustained by complainant were multiple contusions on various parts of the body, with none of which we are now concerned, excepting a severe bruise and brushburn on the right leg, about halfway between the knee and the ankle, on the inner side.
As to that injury, complainant's physician advised her, prior to the execution of the release, as did defendant's examining physician, that it would be cleared up in two or three weeks and that the medical bill would be $25. She had already paid a $2 hospital bill and settled for these two sums, plus $50. She was not working and had not been for over a year prior to the accident. She was on "relief."
The evidence discloses that this brushburn bruise did not clear up as the physician advised, but on December 2d 1935, complainant's physician observed a much different condition of the lower right leg around the area of the original brushburn. There was a noticeable edema and ulceration and increased pain, from which the physician then determined and now concludes that a blood carrier, capillary or otherwise, seated deep in the tissue of the leg, had been injured, causing a closing thereof, so that it had thrombosed, resulting in a breaking down of the surrounding tissue, and the ulceration, a condition which he did not anticipate and which he says he could not have discovered prior to its manifesting itself and not at or before the time of the signing of the release.
Defendant's physician says that the after-condition of complainant's leg injury, above described, was not the result of any deep-seated injury to the blood carriers underlying the area of the brushburn; that there were no such carriers of sufficient size in that area to have formed a clot which would have produced the ulcer, and that the diagnosis of complainant's physician was anatomically impossible; that the blow which caused the injury could not have been of sufficient force and violence to have injured such deep-seated blood vessels, were they, in fact, present; that there was no evidence of free bleeding or evidence of widespread dissemination of blood in the deep tissues, which would have been in evidence *Page 67 
by hematoma, ecchymosis or widespread bluish discoloration beneath the skin and in the soft tissues. He further expressed the opinion that if blood vessels of any size, deep-seated in the leg, had been injured, the entire area below the point of obstruction should have taken on the appearance of gangrene, or if the injury was to a very small blood carrier, the collateral circulation in this part would have been more than ample to compensate for the effects produced by the occlusion of such a small vessel. This physician concludes that the aftermath of the injury was caused by infection which occurred during the course of treatment after the injury had been sustained.
Both physicians are reputable, both personally known to me, and I am convinced that both believe they are correct in their testimony.
In Chicago, c., Railway Co. v. Wilcox, 116 Fed. Rep. 913,914, the court said:
"Nor will such agreements [releases] be lightly disturbed upon confused, conflicting, or uncertain evidence of fraud or mistake. The burden is always upon the assailant of the contract to establish the vice which he alleges induced it, and a bare preponderance of evidence will not sustain the burden. A written agreement of settlement and release may not be rescinded for fraud or mistake unless the evidence of fraud or mistake is clear, unequivocal and convincing."
If complainant's physician is correct in his conclusions as to the cause of the after-condition of complainant's leg injury, we should go to the next step in a consideration of the law and fact, but if defendant's physician is correct, there was no mistake as to the original diagnosis of her injuries, as they stood at the time of the signing of the release, but an infection set in thereafter, hence there was no mistake between the parties at the time of the signing of the release of a past or present fact. The mistake was in the prognosis, the probable developments of the known injury.
It would seem clear that in this state of the evidence the complainant has not carried the burden cast upon her to prove that there was a mutual mistake in the original diagnosis of her injury and that this decision might well rest on that *Page 68 
point. But going further, in order that complainant may have the benefit thereof, is she, under the law, applying the facts in the case to that law, entitled to relief?
It must be kept in mind that in deciding the instant case all elements which would justify the cancellation of a release, outside of mistake, are eliminated and the decision rests on the law applicable to cancellation by reason of mistake and will not take into consideration the question as to the form of the release, i.e., the question as to whether or not the form of the release is sufficient to conclude that the parties contracted with reference to present known, as well as to future unknown injuries.
The great weight of authority supports the doctrine that a release of a claim for personal injuries cannot be avoided merely because the injuries proved more serious than the releasor, at the time of executing the release, believed them to be.Annotation 48 A.L.R. (at p. 1464).
My investigation of the reported cases leads me to concur with the annotation above cited as to the confusion attending any attempt to follow the general rules as laid down in many of the cases, and conclude that the rule which should be followed herein is that: in order to invalidate a release on account of mutual mistake, the mistake must relate to a past or present fact material to the contract and not to an opinion respecting future conditions as a result of present facts. Chicago, c., RailwayCo. v. Wilcox, supra; Nelson v. Chicago, c., Railway Co.,111 Minn. 193; 126 N.W. Rep. 902; Houston, c., Co. v. Brown
(Tex. Civ. App.), 69 S.W. Rep. 651; Homuth v. MetropolitanStreet Railway Co., 129 Mo. 629; 31 S.W. Rep. 903.
The above rule of law is concise and may be applied to the facts in the instant case, while some of the rules laid down in the reported decisions are established in order to fit the facts of the particular case to which they are applied and by reason thereof embrace within the rule statements of law which are not of general application. See Annotation, St. Louis-San FranciscoRailway Co. v. Cauthen, 112 Okla. 256; 241 Pac. Rep. 188;48 A.L.R. 1447 (at p. 1462). *Page 69 
Applying the rule of law, as above laid down, to the facts in the instant case, it seems to me that any mistake that may have been made by complainant's physician was as to a known injury, to wit, the lower right leg, which consisted of a severe bruise and brushburn. That was an observable injury of an extent in depth undetermined, but it was nevertheless the injury which subsequently became aggravated. Both physicians saw this injury and both considered that it was superficial and that it would be cured in three weeks, at most. In this opinion they erred. It was with reference to this injury that settlement was effected and whatever mistake was made was not as to the injury as it manifested itself on complainant's limb, but as to what might happen in the course of the attempt to cure that injury. According to complainant's physician, it was a deeper seated injury than he thought and the deep-seated circulatory system had been injured. According to defendant's doctor, an infection set in, retarding the cure. Both physicians made a mistake as to the length of time necessary to effect a cure, i.e., a mistake not of a past or existing fact, but as to the future development of a known injury. Neither made a mistake as to the kind of injury, its location or nature, but if complainant's physician is correct, they both were mistaken as to the depth of the injury, but this did not in any way change the nature thereof, but simply its depth. If defendant's physician is correct in his theory of after-developments, there was not even a mistake as to the depth but merely an incorrect prognosis and not diagnosis.
In the case of Chicago, c., Railway Co. v. Wilcox, supra, Judge Sanborn points out the difference between prognosis and diagnosis and said, after so doing:
"Again, it is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion or by a mistake in belief relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to *Page 70 
the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtul claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happened very differently from the expectation, opinion, or belief of one or both of the parties."
Complainant relies on various cases decided by the courts of other states, and especially on the cases hereinafter referred to.
The case of McIsaac v. McMurray, supra, deals with a situation where the physician of both parties assured the plaintiff, previous to the date of the release, that the injuries "were not serious, consisting of bruises, that no bones were broken," while the fact was that the neck of the femur of the left hip was fractured. This case is typical of a number of cases which hold, and rightly so, that a release will be set aside where the alleged mistake "relates to injuries that were wholely unknown." But in the instant case the injury was known, but it was the future developments of the known injury that were not known.
In the case of Tatman v. Philadelphia, B. and W. RailroadCo., 10 Del. Ch. Rep. 105; 85 Atl. Rep. 716, the court lays down the rule that: "in order to avoid a release on the ground of mutual mistake, the mistake must relate to a past or present fact material to the contract, and not an opinion respecting future conditions as a result of present facts."
In this case there was an injury to the eye, which releasee's physician advised was not serious in extent but which, in fact, penetrated through four coats of the eye, including the retina. The court held that the release was given for injuries of a certain kind (superficial) while in fact they were not only *Page 71 
more serious in extent "but different in kind," and in that case it was clearly proven that the release was executed by reason of representation made by the physicians of the defendant company, without independent advice. In the instant case, as heretofore noted, there is no element of fraud to aid the complainant, nor may it be said that the inducing cause of her executing the release was representations made by the defendant without the aid of independent advice to the complainant. The injury did not prove to be "different in kind."
Complainant also relies on the rule as laid down in 53 C.J.1211 § 29:
"Where the releasor can show that the release was executed by mutual mistake, as between himself and the releasee, of a past or present fact, material to the release or the agreement to release, as where there was a mutual mistake as to the nature, extent or degree of gravity of the releasor's injury, the release will be avoided, unless it further appears that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished. But a mistake in prophecy, or in opinion, or in belief relative to an uncertain future event, such as the probable developments from, quickness of recovery from, and the permanence of, a known injury, is not such a mutual mistake as will avoid the release."
It is argued that the present case shows that there was a mistake as to the "extent" of the injury. As already noted, complainant has not proved that such a mistake was, in fact, made. Her physician thinks so. Defendant's physician says no. But if that rule is intended to hold that because a known injury is of greater depth than appears on the surface and by reason thereof a cure is delayed and that, therefore, a release may be set aside, it is not, in my opinion, the correct rule of law and not supported by the weight of authority, and that the rule does not so hold is evidenced by the concluding paragraph thereof:
"But a mistake in prophecy, or in opinion, or in belief relative to an uncertain future event, such as the probable developments from, quickness of recovery from, and the permanence of, a known injury, is not such a mutual mistake as will avoid the release." *Page 72 
In Poti v. New England Road Machinery Co., 83 N.H. 232;140 Atl. Rep. 587, also relied on by complainant, it is true that the court, under somewhat similar facts, held that: "it does not follow that an opinion as to the extent of an injury is part of the opinion as to consequences merely because the latter is predicated upon the former. The opinions are in reality separate; one relates to facts of the past and present, and the other relates to an inquiry into the future."
The court, however, said that the distinction drawn "may perhaps be a narrow one." Such a distinction, it seems to me, is not warranted by the facts in this case and, if permitted, would result in an avoidance of practically all releases where an injury proved to be more serious than thought by the releasor and, therefore, contrary to the great weight of authority, as noted in the annotation above quoted, 48 A.L.R. (at p. 1464).
My conclusion is that the bill of complaint must be dismissed.