This is an appeal by the plaintiffs, Earl Boles and Mary Boles, from an order granting the defendants' motion to dismiss. We affirm.
On November 16, 1983, Earl Boles was injured in a motor vehicle accident involving the truck driven by Boles and an automobile driven by defendant Tommy Blackstock. Blackstock's automobile was insured by State Farm Mutual Automobile Insurance Company, Inc. (State Farm), also a defendant herein. Pursuant to settlement negotiations conducted with the Boleses by James Kyzer, a claims adjuster for State Farm, the plaintiffs, along with Hinton Boles, the owner of the truck driven by Earl Boles, executed a release in favor of Tommy and Gayle Blackstock on January 18, 1984. The consideration stated for the release was $4,500.
Some eleven months after executing the release, the plaintiffs filed this action against Blackstock, claiming damages for injuries resulting from Blackstock's alleged negligent operation of his automobile on November 16, 1983. In his answer to the complaint, Blackstock denied that the plaintiffs are entitled to recover damages and alleged that their claims had been "paid and satisfied." Simultaneously with his answer, Blackstock filed a motion for summary judgment, which stated in part that "[t]hese plaintiffs have been paid in full and have executed a valid release, the terms of which release this defendant from any liability to these plaintiffs arising out of an accident that occurred on November 16, 1983." A copy of the release was attached as an exhibit to the motion for summary judgment. This motion was scheduled to be heard at 11:00 a.m. on February 11, 1985; however, on that date, but prior to the hearing, the plaintiffs amended their complaint, adding State Farm as an additional defendant and seeking a rescission of the release based on fraud and mutual mistake. The plaintiffs also sought damages against State Farm for its alleged fraudulent misrepresentations in negotiating the release. This amendment was accompanied by the affidavits of Earl and Mary Boles. A hearing was never held on Blackstock's motion for summary judgment.
On February 20, 1985, defendants Blackstock and State Farm filed a motion to dismiss plaintiffs' amended complaint on the grounds that it (1) failed to state a claim upon which relief could be granted; (2) failed to state sufficient facts to constitute mutual mistake sufficient to set aside *Page 1079 
a release; (3) failed to state a claim for fraud upon which relief could be granted; (4) failed to set out sufficient facts with required specificity to state a claim for fraud upon which relief could be granted; and (5) showed affirmatively that the plaintiffs' claims had been paid and satisfied. Defendants' motion to dismiss was granted on March 4, 1985. This appeal followed.
At the outset, it is necessary to determine the standard of review applicable in this case. Plaintiffs state in their brief the standard applicable to motions to dismiss, namely, that "a plaintiff's complaint should not be dismissed on a motion to dismiss unless it appears beyond all doubt that the plaintiff can prove no facts in support of his claim which would entitle him to relief under some legally cognizable theory," citingRoberts v. Meeks, 397 So.2d 111 (Ala. 1981). However, where matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12 (c), A.R.Civ.P., regardless of its denomination and treatment by the trial court. Sims v.Lewis, 374 So.2d 298 (Ala. 1979); Papastefan v. B LConstruction Co., 356 So.2d 158 (Ala. 1978); Thorne v. Odom,349 So.2d 1126 (Ala. 1977). Once matters outside the pleadings are considered, the requirements of Rule 56, A.R.Civ.P., become operable and the "moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." C. Wright A. Miller, Federal Practice Procedure, Civil, § 1366 at 681 (1969).
In the present case, the trial court did not draft a separate order granting the defendants' motion to dismiss; rather, the motion itself was stamped "Granted" and was signed and dated by the trial court. Thus, there is nothing in the record thatexpressly indicates which material the trial court considered in ruling on the motion. Nevertheless, the plaintiffs' amendment to their complaint was accompanied by their own affidavits, and the amendment itself makes reference to the "Release dated January 18, 1984," a copy of which was attached to defendant Blackstock's motion for summary judgment that had been previously filed. Thus, it would appear that, in ruling on the defendants' motion to dismiss, the trial court necessarily
considered matters outside the pleadings, thereby converting the motion to dismiss into a motion for judgment on the pleadings or for summary judgment. See Green v. BradleyConstruction Co., 431 So.2d 1226 (Ala. 1983); Rhett v.Southland Broilers, Inc., 421 So.2d 126 (Ala.Civ.App. 1982);cf. Sims v. Lewis, supra. Furthermore, plaintiffs have included the previously filed material in the record on appeal, and specifically refer to and quote from this material in their brief on appeal (e.g., "In addition to the release in the casenow before the Court being limited to `. . . all claims, . . . which have resulted or may in the future develop from [the] accident'"). (Emphasis added.) Therefore, we must determine on review whether there existed a genuine issue as to any material fact and whether defendants were entitled to judgment as a matter of law. In so doing, we must view the record before us in the light most favorable to the parties opposing the motion.Papastefan v. B L Construction Co., supra.
 I.
Were defendants entitled to judgment as a matter of law on plaintiffs' claim for rescission on the grounds of mutual mistake?
The facts alleged to have constituted the mutual mistake are set forth in pertinent part in paragraphs 12 through 15 of Count IV of plaintiffs' amended complaint:
 "12. Part of said settlement sum was payment to Plaintiff Mary Boles calculated at One Hundred Dollars ($100.00) per week for five (5) months for her claim for nursing Plaintiff Earl Boles during the five (5) month period Plaintiff Earl Boles was supposed to be incapacitated. Therefore, when James Kyzer persuaded Plaintiffs to execute the Release dated January 18, 1984, he relied on Plaintiff *Page 1080 
Earl Boles' statement that his doctor had said he would be back to normal within five (5) months of the date of said accident.
 "13. Plaintiffs relied on the statement made by Plaintiff Earl Boles' doctor that he would be back to normal within five (5) months from the date of said accident.
 "14. As of this date, Plaintiff Earl Boles' health has not returned to its state prior to the date of said accident and Plaintiff Earl Boles continues to suffer permanent injuries and pain and suffering as a result of the injuries he received in said accident. Plaintiffs did not discover that Plaintiff Earl Boles' health would not return to normal until sometime after April 16, 1984, the time at which Plaintiff Earl Boles' doctor had said his health would be back to normal. Further, Plaintiffs should not have [discovered] and did not discover the fraud perpetrated on them by State Farm through its Adjuster, James Kyzer, until after April 16, 1984.
 "15. Plaintiffs and James Kyzer were mutually mistaken about the facts and extent of Plaintiff Earl Boles' physical injuries and said Release dated January 18, 1984, was executed and accepted based upon said mutual mistake."
These allegations were further supported by the affidavits of Earl and Mary Boles, which, as mentioned above, accompanied the amended complaint.
Because the language of the release executed by the plaintiffs is relevant to our analysis of the issue presented, it is set out in its entirety below:
"RELEASE
 "For the Sole Consideration of Four Thousand Five hundred no/100 Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Thomas [Tommy] Gayle Blackstock, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 16th day of Nov., 1983 at or near Covington Co., AL.
 "This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, their heirs, executors, agents and assigns.
 "Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.
 "Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above.
"In Witness Whereof,
 "We have hereunto set our hands and seals this 19th day of Jan., 1984."
"In presence of:
"/s/ Hinton E. Boles
"/s/ Earl Carson Boles
"/s/ Mary M. Boles"
"[Emphasis added.]"
In Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931), a case quite similar to the present case, the Court affirmed a verdict in favor of the defendants where the plaintiffs sought to avoid a release on the grounds of mutual mistake. In so holding, the Court explained:
 "[I]t appeared without dispute that the plaintiff, in consideration of defendant paying his doctors' and hospital bills, amounting to less than $100, executed a written release `in full and complete *Page 1081 settlement of any and all claims of the undersigned (plaintiff) against the said T.L. Barrett (defendant) on account of such injuries.' [Emphasis added in Miles.]
". . . .
 "Giving to the release what, in his opinion, was its legal effect, the trial court directed a verdict for the defendant by giving the affirmative charge at his request in writing, resulting in verdict and judgment in his favor.
 "The contention here is that there was evidence before the jury tending to show that the plaintiff in executing the release, and the defendant in accepting it, were laboring under mutual mistake of fact, in that both parties acted on the assumption that plaintiff had only suffered a trivial injury to his face, which would not disfigure him, but as a matter of fact one of his cheek bones was crushed, leaving a deep depression on one side of his face, necessitating further surgical treatment.
 "There are numerous decisions that sustain appellant's contention that a release given and accepted under mutual mistake of fact in such cases, as to the nature and extent of the injury, may be avoided, although the execution thereof was not superinduced by fraud, and it may be conceded that the numerical weight of the decisions sustains this view. See St. Louis-San Francisco Ry. Co. v. Cauthen, 112 Okla. 256, 241 P. 188, 48 A.L.R. 1447, and extensive note, 1462.
 "But the rule of our decisions is that, in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach it or vary its terms. Barbour v. Poncelor, 203 Ala. 386, 83 So. 130; Wright v. McCord, 205 Ala. 122, 88 So. 150; Gravlee v. Lamkin, 120 Ala. 210, 24 So. 756.
 "This rule is sustained by a wealth of authority, and by sound reason. See note, 48 A.L.R. pp. 1464-1470." 223 Ala. at 293, 134 So. at 661-62. (Emphasis added, except as indicated.)
The language of the release in question is also clear and unambiguous in its inclusion of "all injuries, known andunknown," and in characterizing the release as "a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose ofprecluding forever any further or additional claims arising outof the aforesaid accident." For that reason, parol evidence, in the form of affidavits or otherwise, to "explain" the parties' reliance on the prognosis of Earl Boles's doctor, would be inadmissible to vary the terms of the release or avoid it in its entirety. See Finley v. Liberty Mutual Ins. Co.,456 So.2d 1065 (Ala. 1984); Cohorst v. United States Steel Corp.,439 So.2d 23 (Ala. 1983); Jehle-Slauson Construction Co. v.Hood-Rich Architects Consulting Engineers, 435 So.2d 716
(Ala. 1983); Conley v. Harry J. Whelchel Co., 410 So.2d 14
(Ala. 1982). Compare Central of Georgia Railway Co. v. Ramsey,275 Ala. 7, 151 So.2d 725 (1962), in which the Court, without discussion of the ambiguity or unambiguity of the releases in question, held that, in the absence of a motion for new trial, judgment for defendant would not be disturbed when there was a scintilla of evidence on the question of whether plaintiff's physician misrepresented his condition to him.[1]
Furthermore, the complaint, as amended, along with plaintiffs' affidavits, alleges *Page 1082 
that the parties relied on the belief or opinion of Boles's doctor that Boles would recover within a certain period of time(viz., five months). The Restatement (Second) of Contracts, § 151 (1979), defines "mistake" as "a belief that is not in accord with the facts." However, the comment to § 151 specifically states that "the erroneous belief must relate to the facts as they exist at the time of the making of thecontract." That comment goes on to explain that "[a] party's prediction or judgment as to events to occur in the future, even if erroneous, is not a `mistake' as that word is defined here." That definition is applicable in this case.
There is no question that the statement by Earl Boles's doctor, to the effect that Boles "would be back to normal within five (5) months of the date of said accident," was a prediction about future events and not an existing fact. InLouisville Nashville Railroad Co. v. Solchenberger, 270 Ala. 536,544-45, 120 So.2d 704, 711 (1960), this Court drew the distinction between that case, where the mistake was as to the plaintiff's condition at the time of the execution of the release, and the situations such as in present case, where the mistake was as to plaintiff's future condition:
 "Defendant argues that if there was a mistake as to plaintiff's physical condition, the mistake was as to a future event and not as to a past or present fact, and, therefore, such mistake would not excuse performance of the agreement. We are cited to Spangler v. Kartzmark, 121 N.J. Eq. 64, 187 A. 770; Pahl v. Tri-City Ry. Co., 190 Iowa 1364, 181 N.W. 670; and Metropolitan Life Ins. Co. v. Humphrey, 167 Tenn. 421, 70 S.W.2d 361; where mistakes in prognosis are distinguished from mistakes in diagnosis. In those cases the courts applied the rule that equity will not release a party from the consequences of voluntary compromises or speculative contracts made with knowledge of the facts and which turn out differently from what was expected. 70 S.W.2d 362. In the case at bar, the mistake was not as to a future event, such as whether or not plaintiff would recover in the future. The mistake was as to an existing fact, that is, plaintiff's physical qualification to return to work at the time the agreement was made."
(Emphasis added.)
As we point out in footnote 1, the Court in Solchenberger,supra, goes on to distinguish that case from Miles v. Barrett,supra:
 "Defendant cites also Miles v. Barrett, 223 Ala. 293, 134 So. 661, where in [an] action at law for personal injury, this court held defendant entitled to affirmative charge because plaintiff had executed release, and that parol evidence could not be received to impeach the release or contradict it. Miles v. Barrett was an action at law. Here relief is sought in equity. There the release had been executed. Here defendant seeks to compel execution
and the rules to be applied are those obtaining in equity when specific performance is the relief prayed for." 270 Ala. at 545, 120 So.2d at 712.
We, therefore, further conclude that, as a matter of law, reliance on a prediction as to future events will not support a claim for rescission of a release based on a claim of mutual mistake of fact, and summary judgment was proper as to plaintiffs' claim of mutual mistake.
 II.
Were defendants entitled to judgment as a matter of law on plaintiffs' claim for rescission on the grounds of fraud?
The defendants argue that, because the plaintiffs have failed to meet a condition *Page 1083 
precedent to maintaining their claim for rescission based on fraud, their claim is waived. That condition precedent is thetimely return of or tender of return of the consideration received by the plaintiffs for the execution of the release. InJehle-Slauson Construction Co. v. Hood-Rich Architects Consulting Engineers, supra, at 719, this Court held that
 "when a contract for release has been induced by fraud, the party claiming fraud must restore the consideration he received under the contract within a reasonable time after discovering the fraud or he waives his right to assert fraud. The plaintiff may not retain the benefits of the release and at the same time attempt to evade its burdens. Barbour v. Poncelor, 203 Ala. 386, 83 So. 130 (1919); Birmingham Ry. Light Power Co. v. Jordan, 170 Ala. 530, 54 So. 280 (1911). Jehle-Slauson has made no attempt to return the consideration it received in return for the issuance of the release; therefore, Jehle-Slauson may not assert a claim of fraud in the inducement of the release." (Emphasis added.)
See also, Edmondson v. Dressman, 469 So.2d 571 (Ala. 1985).
In the present case, there is nothing in the record indicating that the plaintiffs have returned or offered to return the $4,500 they received as consideration for the release. The plaintiffs, however, contend that "Plaintiffs' demand for rescission necessarily embraced and constituted a tender of the return of the money," and they do not argue that they, in any other manner, returned or offered to return the $4,500 consideration they received for the release. Plaintiffs merely assert:
 "In demanding rescission, the Plaintiffs were stating a wish to return State Farm's money and not be bound by the release, i.e. a return to the status quo ante. Defendants, in filing their Motion to Dismiss Amended Complaint, effectively rejected Plaintiffs' tender."
In other words, plaintiffs contend that the claim for rescission was also a "tender by implication." We cannot agree with this contention.
In Louisville Nashville Railroad Co. v. Spurgeon, 272 Ala. 197,199, 129 So.2d 682, 684 (1961), this Court explained:
 "In Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S.W.2d 423, 428, it was said that it is generally regarded as good pleading not to anticipate a defense; and if the defense of compromise and settlement is pleaded, it is then that the plaintiff must respond to it. The court also said:
 "`The restoration or offer of restoration is made in order to accomplish the avoidance of the release and is a condition precedent to doing so. Brotherhood of Railroad Trainmen v. Martin, 256 Ky. 436, 76 S.W.2d 269. We are of the opinion that the requirements and purposes of the tender are met if it is made when the party institutes his effort to vacate and set aside the contract of settlement or release, which is generally in a reply. We have recognized this as being in time. * * *'" (Emphasis added.)
While Spurgeon clearly stands for the proposition that a tender is timely if made along with or contemporaneous to a claim for rescission, that decision cannot be reasonably read to also mean that the mere claim for rescission, standing alone, also operates as a tender with nothing more to be done by the plaintiff. Such a conclusion is without merit.
The plaintiffs, having failed to show that they returned or even tendered a return of the consideration received, are not entitled to proceed with their claim, and, in effect, have waived their right to assert fraud as grounds for rescission of the release. Jehle-Slauson Construction Co., supra. We conclude that the defendants were entitled to judgment as a matter of law, and, therefore, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
FAULKNER, ALMON, ADAMS and HOUSTON, JJ., concur.
[1] We do not think Central of Georgia Railway Co. v. Ramsey,supra, stands for the proposition that the Court of Civil Appeals, in Sager v. Royce Kershaw Co., 359 So.2d 398, 400
(Ala.Civ.App. 1978), concluded it does:
 "Defendant has relied on the law of settlement and release espoused by the cases of Alabama By-Products Corp. v. Kennedy, 228 Ala. 410, 153 So. 862 (1934), and Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931). We believe the case of Central of Ga. Ry. v. Ramsey, 275 Ala. 7, 151 So.2d 725 (1962) effectively overrules the principle of those cases and establishes the general rule in Alabama that a mutual mistake of material fact at the time of signing of a release is ground for rescission. . . ." (Emphasis added.)
It is only when the release in question is found to beambiguous that parol evidence may be introduced to show the existence of a mutual mistake of fact when the release was signed as grounds for a rescission of that release. See alsoLouisville Nashville Railroad Co. v. Solchenberger, 270 Ala. 536, 120 So.2d 704 (1960), in which the Court distinguishesMiles v. Barrett, 223 Ala. 293, 134 So. 661 (1931), from the facts of that case. *Page 1084