### KILOSKI v. PENNSYLVANIA R. CO.
#### Civ. A. No. 1260.

United States District Court
D. Delaware.
Feb. 27, 1951.

322

Harold Leshem, of Wilmington, Del., and Richter, Lord & Farage, of Philadelphia, Pa., for plaintiff.

William Poole and Frank O'Donnell (of Southerland, Berl & Potter), of Wilmington, Del., for defendant.

LEAHY, Chief Judge.

Plaintiff sues under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries resulting from a fall from the tender of an engine; denying negligence, defendant contends the sole cause of the injuries was plaintiff's own negligence. In addition, defendant urges a separate affirmative defense of release or accord and satisfaction with respect to plaintiff's injuries. For a consideration of $100 plaintiff admits signing a release paper but claims he did so under the belief the payment was only on account of wages lost. By affidavit, plaintiff specifies he signed the alleged release upon the representations of the claim agent that unless plaintiff signed the writing defendant would not arrange for hospitalization and operation and, in fact, the sum of $100 was being paid by defendant to plaintiff only, as stated, on account of lost wages. Plaintiff further avers a second claim agent attempted to effect another "release" for the additional sum of $420. Finally, plaintiff's affidavit states that neither of the parties was aware of the exact nature or extent of plaintiff's injuries at the time the release was signed. Concededly, at the time of the execution of the release only the claim agent and plaintiff were present.

On this record, defendant moves for summary judgment; that is the sole issue presently for decision.

1. Plaintiff contends an employee's release, executed either as the result of a mutual mistake of fact or as a result of fraud, is void.[1] He argues that the issue of mistake or fraud is one for a jury and the validity of release should not be resolved simply as a question of law.[2]

2. In support of its affirmative defense, defendant argues there is no suggestion on the present record of such mutual mistake of fact or fraud which will lay a foundation for the rescission of the release or for a holding that it is void. Defendant's main reliance is on Chicago & N. W. Ry. Co. v. Wilcox, 8 Cir., 116 F. 913, 914,[3] which contains a comprehensive discussion of fraud and mistake in connection with the execution of a release by an injured plaintiff.[4] Defendant contends there is no sug-

---

1. Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242; Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 164 A.L.R. 387; Irish v. Central Vermont Ry., 2 Cir., 164 F.2d 837; Thorla v. Louisiana Midland Ry. Co., D.C.W.D.La., 90 F.Supp. 553; Purvis v. Pa. R. Co., D.C.E.D.Pa., 96 F.Supp. 698.

2. As seamen are given special consideration and are treated as wards of the admiralty, this Court carefully scrutinized the release of a seaman although he was not technically incapable of entering into a valid contract of accord and satisfaction. See Spillers v. South Atlantic S. S. Co., D.C.Del., 45 F.Supp. 2, where the extent of injuries at the time of the execution of the release was an issue. Reference is made simply to show Judge Nields made a thorough examination of the facts before deciding on the validity of the alleged accord and satisfaction. The protective classification of seamen has not, as yet, been totally extended to railroad employees for the reason, perhaps, that while dangerous occupation was early recognized by the admiralty the master-servant concept has had a longer but slower development in the common law. The changes in the latter have been mainly statutory in nature. Judge Frank, in Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 767–770, 164 A.L.R. 387, treats this phase of the case in extenso; and his views were adopted by the dissenting Justices (Black, Douglas, Murphy and Rutledge) who were of the view that releases under the Federal Employers' Liability Act should be governed by the same rules which apply to releases by seamen in admiralty, in Callen v. Pennsylvania R. Co., 332 U.S. 625, 631, 68 S.Ct. 296, 92 L.Ed. 242.

3. The principle of the Wilcox case has been approved in Sitchon v. American Export Lines, Inc., 2 Cir., 113 F.2d 830; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497; Spangler v. Kartzmark, 121 N.J.Eq. 64, 187 A. 770.

4. Circuit Judge Sanborn reviewed the applicable legal principles and said:

"The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims. It loves peace, hates broils and dissensions, and discourages the prolongation of litigation and the revival of controversies which have once been closed. The judgment of a court settles the claims submitted to it, and estops the parties from again litigating them after they have been adjudicated. In the absence of fraud or mistake, an executed agreement of settlement of an unliquidated or disputed claim constitutes as conclusive and as effectual an estoppel against the parties to the compromise from again litigating the claim thus settled as the final judgment of a court of competent jurisdiction, to the effect that the rights of the parties are as they are set forth in the agreement; and such a contract is always upheld by the courts. (Citations) Nor will such agreements be lightly disturbed upon confused, conflicting, or uncertain evidence of fraud or mistake. The burden is always upon the assailant of the contract to establish the vice which he alleges induced it, and a bare preponderance of evidence will not sustain the burden. A written agreement of settlement and release may not be rescinded for fraud or mistake, unless the evidence of the fraud or mistake is clear, unequivocal, and convincing. (Citations) *Again, it is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief relative to an uncertain future event.* A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happen-

gestion plaintiff did not at all times know the nature of the injuries which he had sustained. An examination of plaintiff's affidavit, defendant says, makes it clear that plaintiff's mistake, if any, was as to the uncertain duration of a known condition,

ings are not facts, and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties."

After reviewing the testimony of the plaintiff and the examining physicians, the Court concluded that the mistake was one "in prophecy or in opinion" and was not a mistake of a past or present fact. Judge Sanborn wrote:

"There is another reason why she is not entitled to a decree in this suit. It is that if the doctor made the statement, and if she believed it, these facts would not sustain a cause of action for rescission. It is a mistake as to the existence of a past or present fact material to a contract, and that alone, that will warrant its rescission on the ground of mistake. Conceding, for the moment, that the doctor and the agent told the complainant that there was no doubt that she would be well in a year; that she believed this statement; that she relied upon it, and that she has never recovered,—still these facts do not establish a mistake of fact which will warrant the avoidance of a solemn agreement of settlement. The mistake which they established was a mistake in prophecy, in opinion regarding the happening of a future event on the part of the doctor and of the agent, and a mistake in belief as to what the future had in store for her on the part of the complainant. The future duration of the disability, the future effects of the injury, were not matters of fact, but matters of conjecture, of opinion, of belief. The only material facts which conditioned the contract of compromise were the injury which the complainant had received and the acts of the railway company which caused it. These the complainant knew as well on the day she signed the release as she

has ever known them. The future duration and the ultimate effects of the injury were unknown and unknowable future events, a mistake concerning which was a mere mistake of opinion or of belief, and not a mistake of fact. When the complainant signed her release, she knew that her hip had been broken, that the break was a bad one, that the neck of the femur was fractured, and that the injury had been caused by the sudden start of the passenger car in which she was standing. These were all the material facts conditioning her agreement of settlement. If she believed that she would be well in a year, she could not have failed to know that there could be no certainty that this belief was well founded. It is common knowledge, with which all must be charged, that the future effects of a broken bone are uncertain, contingent upon many conditions, and unknowable. The physical and mental condition of the sufferer, the state of his vital organs, his age, his habits of life, the character and temperament of his nervous system, and many other conditions that it is impossible to enumerate or even to conceive, inevitably affect the duration and the character of his disability and the amount of his suffering. Ignorance of the duration of the disabilities and of the ultimate effects of the injuries always exist where compromises are made before a complete recovery is effected. The cases are doubtless rare where the duration of the disability corresponds with the prophecy of the physician or with the belief of the parties when settlements are made. But compromises and releases are not voidable on this account, for the reason that the parties to them know the uncertainty of these future events, and by the very fact of settlement before they develop agree to take the chances of their effects. Their mistakes relative to the future duration of the disabilities and the future effects of the personal injuries that form the subjects of their contracts are mistakes of belief, and not of fact, and form no basis for the avoidance of their contracts. Such was the mistake under which the complainant labored. It was a mistake in the opinion of the doctor and in the belief of his patient with reference to unknowable future events. It was not a mistake of a past or of a present fact, and it presents no ground for a rescission of this release."

but that such mistake is not a ground for rescission of a release which has been otherwise properly entered into between the parties. The numerical authority supports the doctrine that a release of a claim for personal injuries cannot be avoided merely because the injuries prove more serious than the plaintiff, at the time of executing the release, believed them to be.[5] Vice Chancellor Sooy, in the Spangler case,[6] after investigating the confusion attending attempts to follow the general rules as laid down in many of the cases, concludes that the rule should be: In order to invalidate a release on account of mutual mistake, the mistake must relate to a past or present fact, material to the contract, and not to an opinion respecting future conditions as a result of present facts. Likewise as to the fraud feature of the case, defendant points out that the general rule, which is supported by numerous decisions in almost all jurisdictions, is that fraud must relate to a present or pre-existing fact and can not ordinarily be predicated on unfilled promises, or statements as to future events.[7]

■ 3. Here, however, a reading of plaintiff's averments seems to raise factual issues with respect to both fraud and mistake as inducing the alleged release. For example, the complaint charges serious personal injuries. For the purpose of defendant's motion for summary judgment, this averment must be accepted as true. Rogers v. Girard Trust Company, 6 Cir., 159 F.2d 239. If serious personal injuries are the fact, the pittance of $100 as consideration for the release would of itself serve as circumstantial evidence of either fraud or mistake. Moreover, it is conceded the release was obtained at a time when only defendant's claim agent and plaintiff were present. And neither can I ignore plaintiff's statement he was assured by the claim agent that the execution of the writing would not stand in the way of a later settlement for the injuries. In St. Louis & S. F. Ry. Co. v. Dearborn, 5 Cir., 60 F. 880, 882 it was said: "There is a distinction between a representation of an existing fact which is untrue, and a promise to do, or not to do, something in the future. In order to avoid a contract, the former must be relied on." Clearly, plaintiff's signing of the release in suit would seem to come within the quoted language, for plaintiff was of the belief the $100 payment was only on account of wages lost. This, alone (without going into the question of the extent of plaintiff's injuries as considered by both plaintiff and defendant at the time of the execution of the release, or any question involving a promise of something to be done in the future), goes to the question as to what plaintiff believed the paper was that he, in fact, executed. Regardless, therefore, as to the knowledge which both parties could possibly have concerning the full extent of the injuries or as to the perpetration of fraud upon plaintiff by defendant's claim agent, the fact issue presented in this case seems to me to be whether defendant ever intended this paper as a final release, in view of the allegations in the present record that the claim agent represented the document not to be a final release, together with the attempt of defendant later to pay plaintiff an additional amount.

■ I thoroughly understand defendant's desire to have the matter of its separate affirmative defense of accord and satisfaction determined as a matter of law on its motion for summary judgment; but defendant may not avail itself of the device of a motion for summary judgment in the face of the allegations appearing in the paper record. Since real issues of fact exist between the parties, a motion for summary judgment can not be sustained. In short, I am unable to see, in the present case, that taking every fact presented by plaintiff in its most favorable light, it can be said there is still no evidence of mistake or fraud such as would be sufficient to warrant a disposition of this issue on a motion for summary judgment or, perhaps, later without the interposition of a jury.

5. 48 A.L.R. at p. 1464.

6. Ibid., 187 A. at page 772, n. 3.

7. See 51 A.L.R. p. 49.